**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

March 11, 2016

Grange Mutual Casualty Company
P O Box 1218, Attn: Lavawn D. Coleman
Columbus, OH 43216
NAIC # 14060

Certified Mail
Return Receipt Requested
7015 0640 0007 0042 5632
Cashier # 24801

Re:   Victor Llerena And Elena Rodriguez  V.  Grange Mutual Casualty Company

Docket # 16CV-351

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served March 11, 2016, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Rutherford County
    20 Public Square North, Rm 302
    Murfreesboro, Tn 37130

RECEIVED
MAR 2 1 2016
CMCC GENERAL COUNSEL

| STATE OF TENNESSEE 16th JUDICIAL DISTRICT CHANCERY COURT | SUMMONS | CASE FILE NUMBER 16 CV-351 |
|---|---|---|

| PLAINTIFF | DEFENDANT |
|---|---|
| Victor Llerena + Elena Rabiguez | vs. Grange Mutual Casualty Company |

**TO: (NAME & ADDRESS OF DEFENDANT)**

Grange Mutual Casualty Company
c/o Department of Commerce + Insurance
Service of Process Division
500 James Robertson Parkway
Nashville, TN 37243

List each defendant on a separate summons.

---

YOU ARE HEREBY SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, RUTHERFORD COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU ARE DIRECTED TO FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

---

| Attorney for plaintiff: (Name, address & telephone number) | DATE ISSUED & ATTESTED 3-9-16 |
|---|---|
| Sonya S. Wright 122 North Church Street Murfreesboro, TN 37130 615-896-8000 | JOHN A. W. BRATCHER, Clerk & Master BY: Janya Jones Deputy Clerk & Master |

---

## NOTICE OF DISPOSITION DATE

To expedite cases, the Court may take reasonable measures to purge the docket of old cases where the cases have been dormant without cause shown for an extended time.

---

## CERTIFICATION

I, John A. W. Bratcher, Clerk and Master of the Chancery Court of Rutherford County, Tennessee, do certify this to be a true and correct copy of the original summons issued in this cause. JOHN A. W. BRATCHER, CLERK AND MASTER.

BY: _____ DEPUTY C & M

---

| TO THE SHERIFF: Please execute this summons and make your return within thirty days of issuance as provided by law. | DATE RECEIVED |
|---|---|
| | Sheriff |

Submit three copies: service copy, defendant's copy, file copy.    ADA COORDINATOR (615-494-4480)    1/12

# IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE
## AT MURFREESBORO

VICTOR LLERENA and )
ELENA RODRIGUEZ, )
)
    **Plaintiffs,** )
) **JURY DEMAND**
v. )
) Case No.: **16CV-351**
GRANGE MUTUAL CASUALTY )
COMPANY, )
)
    **Defendant.** )
)

## COMPLAINT

Plaintiffs, Victor Llerena and Elena Rodriguez, for their Complaint against Defendant, Grange Mutual Casualty Company ("Defendant" or "Grange"), would respectfully show and allege to the Court as follows:

## GENERAL ALLEGATIONS

1.    Plaintiffs, Victor Llerena and Elena Rodriguez, are residents of Rutherford County, Tennessee and have owned property located at 412 Jonesboro Court, LaVergne, TN 37086 for almost eleven years.

2.    Defendant, Grange, is a for-profit foreign insurance company that appears from the Tennessee Secretary of State's Business Entity to have been administratively dissolved although it does engage in, the sale and delivery of property insurance within the State of Tennessee with its principal place of business located at P.O. Box 1218, Columbus, Ohio 43216-1218. Defendant may be served with service of process through the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

1

3.    Plaintiffs' claim for relief arises from a covered loss to his property located at 412 Jonesboro Court, LaVergne, TN 37086 ("Property").  Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

4.    At all times material hereto, Plaintiffs have been the owners of the Property.

5.    Plaintiffs renewed or procured a policy of homeowner's insurance known as the "Gold Star Homeowner" ("Policy"), from Defendant covering the above-referenced Property on or about July 16, 2013.  A copy of the certified Policy is attached as Exhibit 1.

6.    In consideration of premiums paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' Property against risks, including sinkhole activity.  The Policy provided dwelling insurance coverage in the amount of $150,900.00, in addition to other coverages.

7.    Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.    On or about May 1, 2014, while the Policy was in full force and effect, the Property was damaged.

9.    The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10.    A notice of loss and damage was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11.    On or about May 6, 2015, Defendant advised Plaintiffs that it was denying coverage because it had been determined that "the damage claimed as a result of sink hole damage is not a result of sink hole activity."  A copy of this correspondence is attached as Exhibit 2.

12.    In the same correspondence, Defendant failed to identify what was causing the damage to the Property but instead just listed multiple exclusions. *See Exhibit 2.*

2

13. This investigation did not address the confirmed sinkhole in the cul-de-sac in close proximity to the Property, did not involve any subsurface investigation, and did not provide what the cause of the damage was. *See Exhibit 2.*

14. On or about June 10, 2015, Plaintiffs, through counsel, outlining each of these concerns and requesting that actual testing be completed, or that Plaintiff would seek a bad faith penalty for the handling of his claim. A copy of this correspondence is attached as Exhibit 3.

15. On or about June 18, 2015, Plaintiffs then received correspondence from Defendant stating that there was "testing/measurement performed on the home to the extent deemed necessary for the engineer" and stated that there "coverage determination outlined in our coverage denial letter dated May 6, 2015 remains the same" *again* without conducting any actual subsurface investigation. A copy of this correspondence is attached as Exhibit 4 without the enclosures.

16. On or about June 18, 2015, Defendant failed to acknowledge or explain how the analysis conducted was of sufficient scope to eliminate sinkhole activity as the cause of the damage to the Plaintiffs' home within a reasonable professional probability. Defendant also failed to show that all of the damage was related to an exclusion in the Policy that allowed it to deny coverage.

17. More than 60 days has passed since Plaintiffs demanded payment and as of the date of this filing, there has been no indication from Defendant that the claim will be paid and no payment has been made on the claim.

18. Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained.

19. Plaintiffs have been required to retain the services of the undersigned counsel and is obligated to pay her a reasonable fee for her services.

3

## BREACH OF CONTRACT

20.    Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 19 above as though fully set forth herein.

21.    Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity by failing to eliminate sinkhole activity as a cause of the damage and by failing to prove that an exclusion exists that allows coverage to be denied.

22.    Defendant failed to properly investigate the Property as required under the Policy and by state statute.

23.    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

24.    Defendant failed to investigate the Plaintiffs' claim in a prompt and thorough manner.

25.    Defendant intentionally ignored repeated requests to reconsider its wrongful denial of insurance coverage for the Plaintiffs' claim and failed to provide its full investigation materials upon request.

26.    Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage for the type of loss incurred.  Such acts or omissions were committed intentionally, recklessly, and/or negligently.

27.    Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits,

4

an amount equal to such limits for the total constructive loss as well as a return of all premiums paid for the Policy.

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

28.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

29.     Defendant has breached the covenant of good faith and fair dealing that is a part of the Policy that it made with the Plaintiffs.

30.     Defendant has evaded the spirit of the bargain with the Plaintiffs, has shown a lack of diligence with regards to the investigation of the claim, and has willfully failed to perform under the Policy.

31.     Defendant continuously collected premiums from the Plaintiffs for almost eleven years and agreed that it would provide coverage but then upon receipt of a claim, Defendant denied coverage without conducting any subsurface testing and determining the cause of the damage.

## UNFAIR CLAIMS PRACTICES

32.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

33.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

(A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105 when it delayed providing a coverage determination for months;

(B)     Refusing to pay Plaintiffs' claim without conducting a reasonable investigation in violation of Tenn. Code Ann. § 56-8-105 when it failed to follow the mandates of investigation in the Sinkhole Statute; and,

5

(C)     Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105 by failing to disclose the coverage under the Sinkhole Statute.

34.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and supports Plaintiffs' claim for breach of contract and bad faith.

### VIOLATIONS OF THE TENNESSEE SINKHOLE STATUTE

35.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 34 above as though fully set forth herein.

36.     Defendant has violated the Tennessee Sinkhole Statute ("Sinkhole Statute"), Tennessee Code Annotated section 56-7-130, when Defendant had an obligation to comply with the Sinkhole Statute.

37.     The Defendant's acts and/or omissions in violation of the Sinkhole Statute include but are not limited to: failing to conduct an investigation as required under the Sinkhole Statute, failing to investigate other properties as required under the Sinkhole Statute, and failing to obtain a written certification that eliminated sinkhole activity as a cause of the damage within a reasonable professional probability.

38. The Plaintiffs' are homeowners in the state of Tennessee, are within the protection of the Sinkhole Statute, and are intended to benefit from these laws.

### NEGLIGENCE *PER SE*

39.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 38 above as though fully set forth herein.

40.     Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130(d), including those described above and including but not limited to the following respects:

6

(A)     Defendant denied the claim prior to investigating confirmed sinkhole activity in close proximity to the Property;

(B)     Defendant failed to obtain a written certification stating that sinkhole activity was eliminated from the Property; and,

(C)     After additional requests by the Plaintiff, Defendant still failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130 (d)(2).

41.     As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured. Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and were intended to benefit from these laws.

## BAD FAITH

42.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

43.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

44.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner; and,

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims.

Such acts or omissions were committed intentionally, recklessly and negligently.

7

45.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate the misconduct.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; (vi) punitive damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiffs prays for all relief and damages to which they are entitled under the common law, the Sinkhole Statute, and state law, including compensatory damages, attorney fees, and costs in an amount not to exceed six hundred thousand dollars. ($600,000.00).

8

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which they may be entitled.

Respectfully submitted,

*Sonya S. Wright*

Sonya S. Wright (BPR 023898)
Farrar | Wright, PLLC
122 North Church Street
Murfreesboro, Tennessee 37130
(615) 800-4747, phone
(615) 900-3473, facsimile
sonya@farrarwright.com

*Attorney for Plaintiffs*

The firm of Farrar | Wright, PLLC is surety for all costs in this cause.

*Sonya Smith Wright*

Sonya Smith Wright

STATE OF TENNESSEE RUTHERFORD COUNTY

THE UNDERSIGNED, CLERK AND MASTER OF THE SAID COUNTY AND STATE
HEREBY CERTIFIES THAT THE FOREGOING IS A CORRECT COPY OF THIS
INSTRUMENT FILED IN THE FOREGOING CAUSE IN THE CHANCERY COURT OF
MURFREESBORO, TENNESSEE
THIS ___9th___ DAY OF ___March '16___
JOHN A.W. BRATCHER, CLERK AND MASTER
BY _____
DEPUTY CLERK AND MASTER

9



**AFFIDAVIT**

STATE OF OHIO        )
                                  ) ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, Linda J. Mettle states as follows:

1. That she is employed by the Grange Insurance Companies as an Administrative Assistant and that in such capacity she has access to certain business records of that Company, including insurance records concerning the policy of insurance issued to Victor Llerena & Elena Rodriguez.

2. This information is being presented in response to a request regarding Claim Number: HP0001862131.

3. That after examining the records concerning said insured, she states that Grange Mutual Casualty Company has issued to said insured a Home Policy number GH 6449679.

4. That she has assembled a copy of which is attached hereto and shows the policy coverages and amounts thereof in effect on 5/1/2014.

5. Further affiant saith naught.

_____
Linda J Mettle

Subscribed and sworn to in my presence at Columbus, Ohio, this 26th day of March, 2015.

_____
Notary Public

JONATHON CLIPSON
Notary Public, State of Ohio
My Commission Expires
6/16/2018

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio  43216-1218

06/17/13

VICTOR LLERENA
&ELENA RODRIGUEZ
412 JONESBORO CT
LAVERGNE TN  37086

**Policy Number:** GH   6449679-09

## *Easy ways to lower your home insurance costs*

Dear Policyholder:

A few simple changes to your home insurance policy could equal big savings on your premium.

One of the best ways to trim your costs is by **increasing your loss deductible** . The higher your deductible, the lower your premium.

Your current loss deductible on your home is:

> $500 and your Wind/Hail   Deductible   is 1.0%

You could save:

> O    $144.00 if you choose a $750 deductible with your 1.0% Wind/Hail   Deductible
> O    $266.00 if you choose a $1000 deductible with your 1.0% Wind/Hail   Deductible

Need a little more money in your pocket? Contact your agent to take advantage of these money saving options.

Grange also offers several generous discounts, like the Multi-Policy Discount, that can boost your savings even more. If your vehicle is insured by another company, contact your agent and ask for a quote to see how much more you can lower your insurance costs.

Thank you for choosing Grange to protect your home.

These savings represent the current policy information we have in our records and include all rating and underwriting changes that we are aware of before the date printed on this letter. Any pending changes, or changes posted after this date, are not reflected in these quotes. Please be aware that these figures are estimates and may vary slightly from the actual final policy premium.

AP451 (10-2011)                    *Grangeinsurance.com*

*PARKER & WATTS INS AGENCY*
*4825 TROUSDALE DR SUITE 224*
*NASHVILLE, TN      37220*



**Grange**
Insurance®

Grange  Mutual  Casualty  Company
P.O. Box 1218
Columbus, Ohio 43216-1218

*(615) 833-3300*
*Agent No. 41-593-00*
johnp@parkerwatts.com
www.parkerwatts.com

**Declarations  Page**

To report  a new  claim,  call
**1-800-445-3030**    or your  agent

Named    Insured   and  Address

| Policy  Type: | *Gold Star Homeowner* |
|---|---|

**Reason  Issued:**  *Renewal*
**Policy  Number:**  *GH  6449679-09*
**Issue  Date:**  *06/17/13*
**Billable  Party:**  *Mortgagee*

VICTOR  LLERENA
&ELENA  RODRIGUEZ
412  JONESBORO  CT
LAVERGNE  TN  37086

**From:** *07/16/13*  **To:** *07/16/14*   12:01 a.m. standard time at the described location and for additional 12 month periods if renewed, as provided in the policy. These declarations with policy provisions, applications, forms, and endorsements, if any, complete the above numbered policy.

The premises  covered  by this policy is located  at  the  address  of  the  insured.

*Coverage is provided where a specific premium charge or limit of liability is shown.*

| Coverages | Limits  of  Liability | Premium |
|---|---|---|
| **TOTAL POLICY  PREMIUM** | | **$1,468.00** |
| Section  l - Property   Protection | | |
| Coverage  A - Dwelling | $150,900 | $2,506.00 |
| Coverage  B - Other Structures | 15,090 | Included |
| Coverage  C - Personal  Property | 105,630 | Included |
| Coverage  D - Loss of Use | 30,180 | Included |
| Loss Deductible     $500, Unless  Otherwise  Stated | | |
| Loss Deductible  1 % ( $1,509) for Losses | | |
| Caused  by Windstorm  or Hail | | |
| **Section  ll - Personal  Liability  Protection** | | |
| Coverage  E - Personal  Liability | 100,000 each occurrence | 8.00 |
| Coverage  F - Medical  Payments  to Others | 1,000 each person | Included |
| | 25,000 each accident | Included |
| Total  Basic  Coverage    Premium | | 2,514.00 |
| Total  Discounts,  Surcharges  and  Optional Coverages   Premium | See reverse  for detail | 1,046.00CR |

*Want To Save $$$$$? Insure your*
*Personal Auto with Grange and save money*
*on both your Homeowner and Auto Policies*
*with our MULTI POLICY DISCOUNTS*

Total  Premium                    **$1,468.00**

**THIS IS NOT A BILL.**
Any outstanding   balance due  will be billed  at  a later  date.

*INSURED*

**page    1**
HOPOL14

HO 241 D (08-2006)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 14 of 79 PageID #: 17

| Mortgagee(s) | | |
|---|---|---|
| 1<br>MI CASA OF AMERICA<br>1011 CHERRY AVE<br>NASHVILLE TN<br>37203<br>Loan Number: 04 0405 | 2<br>AFFORDABLE HOUSING RESOURCES<br>INC      ISAOA<br>1011 CHERRY AVENUE<br>NASHVILLE TN           37203<br>Loan Number: 040668 | |

### Type of Policy & Rating Information

| | |
|---|---|
| Homeowners Form: *HO-3 (09/91)* | Dwelling Number: *0* |
| Number of Families or Units: *1* | Territory: *175* |
| Type of Construction: *Frame* | Residence Usage: *Primary* |
| Protection Class: *5* | |

### Description of Discounts, Surcharges and Optional Coverages

| | Premium |
|---|---|
| Inflation protection applies to this residence at renewal, Additional coverage - Section I (1). | Included |
| HO-567 (12-03) Windstorm or Hail Deductible,<br>  Coverage Applies to Dwelling Number 0, Percentage is 1 ( $1,509) | Included |
| HO-100 (07-08) Partner Plus Endorsement | No Charge |
| HO-536 (7-99) Back-Up of Sewers or Drains Coverage,<br>  Coverage Applies To Dwelling Number 0,<br>  Amount Of Coverage Is $ 10000 | $40.00 |
| HO-538 (5-00)  Identity Theft,<br>  Amount Of Coverage Is $ 10000 | $16.00 |
| HO-542 (9-02) Fungi, Wet or Dry Rot, or Bacteria Coverage,<br>  Coverage Applies To Dwelling Number 0,<br>  Section I - Property Protection Limit is: $ 10,000,<br>  Section II - Personal Liability Protection Limit is:<br>    Coverage E - Limit of Liability, $25,000 each occurrence,<br>    Coverage F - Limit of Liability, $1,000  each person,<br>                         $25,000 each accident | $13.00 |
| HO-620 (7-99) Homeowners Vantage Plus Endorsement,<br>  Coverage Applies To Dwelling Number 0,<br>  Limit for Personal Property has been increased to 70% | $171.00 |
| Blue Ribbon Discount 5 | $1,378.00CR |
| Policy Deductible Charge or Credit on Dwelling 0 | $92.00 |
| Discount/Surcharges are estimated. The sum of discounts/surcharges may not add up to the total due to rounding. | |

| Total Discounts, Surcharges and Optional Coverages Premium | 1,046.00CR |
|---|---|

Named  Insured:  *VICTOR LLERENA*

Policy  Number:  *GH  6449679*

*INSURED*

*page*   2

HOPOL22

## Grange Insurance
## Information Privacy Practices

Protecting your privacy is important to Grange Insurance and our employees. This notice applies to the information sharing practices of Grange Mutual Casualty Group and its wholly owned subsidiaries and/or affiliates Grange Life Insurance Company, Grange Indemnity Insurance Company, Grange Insurance Company of Michigan, Integrity Mutual Insurance Company, Integrity Property & Casualty Insurance Company, Trustgard Insurance Company and Grange Property & Casualty Insurance Company (referred to in this notice as "Grange Insurance", "We", or "Our"). We want you to understand what information we collect and how we use it at Grange Insurance and with any nonaffiliated third parties. The following policy serves as a standard for all Grange Insurance employees for collection, use, retention, and security of your nonpublic personal information. We reserve the right to amend the policy at any time.

### What Information We Collect

We may collect "nonpublic personal information" about you from the following sources: information we receive from you on applications or other policy forms, such as name, address, and Social Security Number; information about your transactions with us, such as information about balances and payment history; and information we receive from consumer reporting agencies such as your credit history, insurance score, motor vehicle report, your accident and claim histories as well as medical information for purposes of life insurance.

"Nonpublic personal information" is nonpublic information about you that we obtain in connection with providing an insurance product and/or financial service to you.

### What Information We Disclose

Grange Insurance provides you with a broad array of property and casualty insurance, life insurance, auto insurance, homeowners insurance and/or renters insurance policies and products designed to meet all of your needs in a fast and cost effective manner. We are permitted under law to share information about our experiences or transactions with you or your policy and/or accounts with the affiliated companies listed in this notice, which are all under common control, and ownership operating from the same offices in Columbus, Ohio. We also may share additional information about you or your policy and/or accounts (such as any information from consumer reporting agencies) with our affiliates. **Federal law gives you the right to limit the sharing of information regarding your credit worthiness among our affiliates and to prohibit affiliates from using your information to market products and services to you.**

We also are permitted under law to disclose nonpublic personal information about you to "nonaffiliated third parties" (i.e., third parties that are not members of our corporate family) in certain circumstances. For example, we may disclose nonpublic personal information about you to such third parties to assist us in servicing your policy with us; to government entities in response to subpoenas; to consumer reporting agencies, and entities that perform marketing services on our behalf. **We do not disclose any nonpublic personal information about you to any other third parties, except as permitted by law.**

If you become an inactive customer, we will continue to adhere to the privacy policies described in this notice.

### Our Security Procedures

We also take steps to safeguard customer information. We restrict access to your personal and policy information to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that guard your nonpublic personal information.

### Annual Notice

This privacy notice is sent on an annual basis. If you have already provided us with an "opt-out" notice, you do not need to send another one to us.

---

Complete and return this portion of this form **only if you do not want us to disclose or share** the following information to the affiliates mentioned in this notice. *After indicating your election below and providing the required information, please cut at the line and return to:*

## Grange Mutual Casualty Group
## ATTN: OPT OUT COORDINATOR
### P.O. Box 1218
### Columbus, OH 43216-1218

☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.

☐ Do not allow your affiliates to use my personal information to market their products or services to me.

*If two or more customers jointly obtain a product or service from us (joint customers), we will treat an opt out instruction by one of the joint customers as applying to the entire account.*

*If you opt out, you may not receive the full complement of Grange Insurance products offered to Grange customers.*

| Name: | Address: | List All Policy Number(s): |
|---|---|---|
|  |  |  |

IO169 (05-2010)

06/17/13

*Grange Mutual Casualty Company*
*P.O. Box 1218*
*Columbus, Ohio 43216-1218*

VICTOR LLERENA
&ELENA RODRIGUEZ
412 JONESBORO CT
LAVERGNE TN  37086

**Policy Number:** GH   6449679-09

## YOUR RIGHT TO HAVE YOUR INSURANCE   CREDIT SCORE RECALCULATED

Dear Policyholder;

Grange Mutual Casualty Company, like other insurance companies, uses insurance scores to assist in the development of the appropriate insurance premium for each risk we insure. An insurance score helps predict the possibility of future losses that an individual policyholder may have.

While insurance scores are used to develop the insurance premium, it is not the only determinant of the final rate. There are a number of rating variables that make up the final rate. For example, an auto policy is rated using type of vehicle, age of driver, accidents and/or violations of the driver, etc. A homeowner policy is rated using such variables as the fire protection available, type of construction, year of construction, past claims, etc.

We would like to inform you of your right to request that your insurance score be rerun and reevaluated based on the current information available. This means that based on the new insurance score, your premium could increase or decrease and the new premium applied to the next effective date of your policy. Grange is not required upon your request to recalculate your insurance score more frequently than once every twelve (12) months.

This notice applies to the insurance scoring practices of Grange Mutual Casualty Company and its wholly owned subsidiaries including Grange Indemnity and Trustgard Insurance Company.

If you have any questions, or would like to request your insurance score be rerun and reevaluated, please contact your Grange agent.

Agent: PARKER & WATTS INS AGENCY

*IO229P (12-2004)*          *Grangeinsurance.com*

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| State Exceptions To Homeowners Policy Provisions |
|---|

**Tennessee**

**Policy Number: GH    6449679**

## Definitions Used Throughout This Policy

The following definition is added to the **Definitions Used Throughout This Policy** section:

"**Fungi** "

(a) **Fungi** means any type or form of fungus, including mold or mildew, and any Mycotoxins, spores, or by-products produced or released by **fungi** .

(b) Under Section II - Personal Liability Protection, this does not include any **fungi** that are on, or are contained in, a good or product intended for consumption.

## Coverage C - Personal Property

**Coverage C** - Personal Property is amended as follows:

Exclusion 5., **business** property, is deleted.

The following Personal Property Groups are added to Special Limits on Certain Property:

9.  $2,500 for property, on the **residence premises**, used at any time or in any manner for any **business** purpose.

10. $250 for property, away from the **residence premises**, used at any time or in any manner for any **business** purpose.

## Additional Coverages - Section I

The following is added to the Additional Coverages - Section I:

**Sinkhole Collapse**

We insure for direct physical loss to property covered under Section I caused by Sinkhole Collapse.

Sinkhole Collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

*GJ210P (6-2013)*

Any provision in this policy which excludes loss by "earth sinking" is amended to exclude loss by "earth sinking other than sinkhole collapse".

This coverage does not increase the limits of liability stated in this policy.

All other policy provisions apply.

**Wreck Removal Coverage**

For purposes of this coverage, **boat** is defined as:

an inboard boat, inboard/outboard boat, outboard boat or sailboat, including permanently attached equipment other than outboard motors.

**We** will pay the reasonable costs **you** incur for raising, removing or destroying **your** damaged **boat** or any non-owned **boat you** are responsible for when such action is required by law. **We** will also pay for damages **you** incur as a result of the removal or failure to remove the **boat**.

Coverage is limited to 10% of the limit of liability shown under the **boat** description of scheduled property.

## Exclusions - Section I

The following exclusion is added to all Coverages:

**We** do not cover loss resulting directly or indirectly from **fungi** , wet or dry rot, or bacteria. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Exclusion 2, 3 & 9 are removed and replaced with the following:

**We** do not cover loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

2.  Earth movement caused by or resulting from human or animal forces or any act of nature. Earth movement includes, but is not limited to, earthquake, landslide, mine subsidence, mudflow, mudslide, earth sinking, rising, expanding, shifting, contracting, erosion, or movement resulting from improper compaction,

*continued...*

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

**Policy Number: GH    6449679**

---

**State Exceptions To Homeowners Policy Provisions**

**Tennessee**

or site selection. **We** do cover direct loss that follows caused by fire, explosion or breakage of glass, provided the resulting fire, explosion or breakage of glass loss is itself a covered loss. **We** also cover direct physical loss to covered property caused by sinkhole collapse. Sinkhole collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

3. Water damage caused by or resulting from deterioration, human, mechanical or animal forces or any act of nature meaning:

   a. Flood, surface water, waves, tidal water, tsunami, seiche, storm surge or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by wind;

   b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment;

   c. Water or water-borne material below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway, foundation or swimming pool; or

   d. Release of water held by a dam, levee, dike or by a water or flood control device or structure.

   **We** do cover direct loss that follows, caused by theft, fire or explosion, provided the resulting theft, fire or explosion loss is itself a covered loss.

9. **We** do not provide coverage for a person who is insured under this policy if that person commits or directs an act with the intent to cause a loss.

**Exclusions - Section I**

In the HO-3 Special policy form, Exclusion 1.(c) & 7. are removed and replaced with the following:

Under Dwelling and Other Structures Coverages, **we** do not cover loss resulting directly from:

1. (c) smog, rust or other corrosion;

7. Defect, fault, inadequacy, weakness or unsoundness in:

   a. Planning, zoning, development, surveying, siting;

   b. Design, specifications, workmanship, repair, construction, renovation or remodeling, grading, compaction;

   c. Materials used in repair, construction, renovation or remodeling. This applies even if the material serves the purpose for which it was manufactured, but its properties, contribute, directly or indirectly to its loss, evaluation or destruction, or the loss, devaluation or destruction of other material or property; or

   d. Maintenance of parts or all of any property whether on or off the **residence premises** .

**Conditions - Section I**

Condition 1., **What To Do In Case Of Loss**, is amended by adding the following:

   (i) cooperate with **us** in the investigation of a claim.

The following change applies to the HO-2 & HO-3 Homeowners Policy forms only. Paragraph 2.b. (1) and (5), of the Condition 2. **How Losses Are Settled** are removed and replaced with the following:

2. **How Losses Are Settled**

   b. A covered loss to property covered under Coverage A - Dwelling and Coverage B - Other Structures will be settled as follows:

   (1) How a loss to the dwelling or other structure will be settled will depend on how the amount of insurance relates to the full replacement cost.

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 19 of 79 PageID #: 22

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

**Policy Number: GH    6449679**

| State Exceptions To Homeowners Policy Provisions |
|---|

**Tennessee**

(5) If the full cost to repair or replace the damaged property is more than $2,500 or 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed. Once actual repair or replacement is complete, we will settle the loss according to the provisions of 2.b. (2), 2.b. (3) and 2.b. (4) above.

The following change applies to the Homeowners HO-2 Broad Policy form, HO-3 Special Policy form and the HO-6 Condominium Unit-Owners Policy forms only. Under Condition 8. **Mortgagee** , paragraph a. under Our Duties and paragraph c. under Mortgagee's Duties are removed and replaced with the following:

8. **Mortgagee**

   **Our Duties:**

   **We** will:

   a. protect the mortgagee's interests in the insured building. This protection will not be invalidated by any act or neglect of any **insured person** , breach of warranty, increase in hazard, change of ownership, change of occupancy or foreclosure if the mortgage has no knowledge of these conditions; and

   Mortgagee's Duties

   The mortgagee will:

   c. notify **us** of any foreclosure, change of ownership or occupancy or any increase in hazard within 30 days of obtaining knowledge of these conditions;

Condition 8. of the HO-4 Tenants Policy form and Condition 9. of the HO-2, HO-3, & HO-6 Policy forms, **Suit Against Us** , is replaced with the following:

### Suit Against Us

**We** may not be sued unless there is full compliance with all the terms of this policy. A suit, or claim for loss must be brought within one year after the loss or damage occurs.

### Section II - Personal Liability Protection

The second paragraph under COVERAGE E - PERSONAL LIABILITY COVERAGE is removed and replaced with:

If a claim is made or suit is brought against the **insured person** for damages because of **bodily injury** or **property damage** caused by an occurrence to which this coverage applies, **we** will defend the **insured person** at **our** expense, using lawyers of **our** choice. Upon issuance of a reservation of rights letter to any party, **we** reserve the right to recover from any party to whom **we** have provided a defense any defense costs incurred by **us** should a court of competent jurisdiction conclude that **we** had no duty to provide a defense to that party. The reservation of rights letter will give notice of the coverage issues and **our** right to recover defense costs.

Recoverable defense costs include only those attorney fees and costs associated with the defense of the party to whom the reservation of rights letter was issued. **We** are not obligated to pay any claim or judgment or to defend after **we** have paid an amount equal to the limit of **our** liability shown on the Declarations Page for this coverage. **We** may investigate or settle any claim or suit as **we** think appropriate.

### Section II - Personal Liability Protection

The following language is being added under COVERAGE F - MEDICAL PAYMENTS TO OTHERS COVERAGE :

"**Reasonable** " as used in Coverage F - Medical Payments to Others coverage means: Expenses that are consistent with the usual charges of the majority of similar medical providers in the geographic area in which expenses were incurred for the specific medical service.

*GJ210P (6-2013)*

*page 3*

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 20 of 79 PageID #: 23

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

Policy Number: GH     6449679

> **State Exceptions To Homeowners Policy Provisions** .

**Tennessee**

"**Necessary** " as used in Coverage F - Medical Payments to Others coverage means: Services that are rendered by the medical provider within the legally authorized scope of the provider's practice and are recognized within that practice as being appropriate treatment in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

We have the right to utilize outside sources, vendors, experts, consultants and software tools of **our** choosing to review the medical expense invoices and medical treatment records to assist **us** in determining, among other things, if the expenses and treatment are **reasonable** and **necessary** .

## Additional Coverages - Section II

Additional Coverages 2. **The Following Expenses** is changed to **Claims Expenses** and the following language has been changed as follows:

1. The following paragraph is added before paragraph 2.a.:

   In addition to **our** limit of liability, **we** will pay on behalf of an **insured person** :

2. Paragraphs 2.d. and e. are removed and replaced with the following:

   d. Upon request by an **insured person** , all reasonable expenses incurred by an **insured person,** to assist **us** in the investigation or defense of a lawsuit, at **our** request, including actual loss of earnings of an **insured person** , up to $250 a day, but not other income, when **we** ask that **insured person** to help **us** investigate or defend any claim or suit.

## Exclusions - Section II

Under Personal Liability Coverage and Medical Payments to Others Coverage, Exclusions 3. and 9. are removed and replaced with the following:

3. **Bodily injury** or **property damage** arising out of or in connection with a **business** conducted from an **insured premises** or engaged in by an **insured person** , whether or not the **business** is

owned or operated by an **insured person** or employs an **insured person** . But, **we** will cover activities of that **insured person** not ordinarily incident to **business** pursuits. **We** do cover the occasional or part-time **business** activities of a **resident** who is a minor, or a **resident** who is a full-time student under 21 years of age.

This Exclusion 3. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business** .

9. **Bodily Injury** or **property damage** which arises out of the transmission of a communicable disease by an **insured person** through bacteria, parasite, virus, or other organism, to any other person; or the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured person** to any other person.

Under Personal Liability Coverage and Medical Payments to Others Coverage, Exclusions 12., 13., 14., & 15. are being added:

12. Any claim for:

    a. **bodily injury** or **property damage** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of:

       (1) **fungi** , wet or dry rot, or bacteria;
       (2) lead or asbestos;
       (3) lead or asbestos compounds; or
       (4) materials containing lead or asbestos; or

    b. any loss, cost or expense arising out of, resulting from or in any way related to any:

       (1) claim, suit, request, demand or order that any **insured person** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of:

*GJ210P (6-2013)*                                               *page 4*

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 21 of 79 PageID #: 24

**State Exceptions To Homeowners
Policy Provisions**

**Tennessee**

(a) **fungi** , wet or dry rot, or bacteria;
(b) lead or asbestos;
(c) lead or asbestos compounds; or
(d) materials containing lead or asbestos; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treatment, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of:

(a) **fungi** , wet or dry rot, or bacteria;
(b) lead or asbestos;
(c) lead or asbestos compounds; or
(d) materials containing lead or asbestos; or

13. Any claim for:

a. **bodily injury** or **property damage** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of pollutants at any time.

b. any loss, cost or expense arising out of, resulting from or in any way related to any:

(1) claim, suit, request, demand or order that any **insured person** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

14. Any claim for:

**Bodily injury** or **property damage** arising out of the transportation of the watercraft on land.

15. Any claim for:

**Bodily injury** or **property damage** arising out of the boat, outboard motor and boat trailer while it is:

a. being used to transport persons or goods for compensation;

b. rented to others;

c. being operated in any official race or speed contest.

This exclusion does not apply to any sailboat participating in a race or any boat participating in a predicted log cruise.

Under Personal Liability Coverage, exclusion number 4. is deleted and replaced by the following:

**Bodily Injury** to a person if an **insured person** has or is required to have a policy providing workers' compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease benefits covering the **bodily injury** .

Under Medical Payments to Others Coverage, exclusion number 1. is deleted and replaced by the following:

**Bodily Injury** to a person who is entitled to benefits which are provided or required to be provided under any workers' compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease law.

**General Policy Conditions Applying to Section I and Section II**

Condition 3. **Concealment or Fraud** and Condition 9. **Breach of Warranty** are removed and replaced with the following:

3. **Misrepresentations, Warranties and Fraud**

A. To determine eligibility for coverage under this policy and to determine the premium, we

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 22 of 79 PageID #: 25

Grange Mutual Casualty Company
P.O. Box 1218
Columbus, Ohio 43216-1218

| State Exceptions To Homeowners Policy Provisions |
|---|

Policy Number: GH    6449679

**Tennessee**

relied upon the statements made to **us** and warranties provided to **us** in the application. **We** may void this policy from inception, deny coverage under this policy, or, at **our** election, assert any other remedy available under applicable law, if at the time of application, any time during the policy period, or in connection with the presentation or settlement of any claim **you**, **a resident** in **your** household, an **insured person**, or any person seeking coverage under this policy:

(1) Made incorrect statements or warranties to **us** with regard to any material fact or circumstance;

(2) Concealed or misrepresented any material fact or circumstance; or

(3) Engaged in fraudulent conduct;

in any application or form submitted to **us** for this insurance, or with regard to any other aspect of this insurance, including, but not limited to procurement of this policy, or presentation of a claim.

If **we** void **your** policy, the premium **you** have paid will be refunded.

B. Following an accident or loss, **we** may void this policy from inception, deny coverage under this policy, or, at **our** election, assert any other remedy available under applicable law, if **you**, **a resident** in **your** household, an **insured person**, or any person seeking coverage under this policy:

(1) Made incorrect statements or warranties to **us** with regard to any material fact or circumstance;

(2) Concealed or misrepresented any material fact or circumstance; or

(3) Engaged in fraudulent conduct;

in any application or form submitted to **us** for this insurance, or with regard to any other aspect of this insurance, including, but not limited to procurement of this policy, or presentation of a claim.

C. In the event of **our** reasonable belief insurance fraud may exist regarding any claim, an **insured person** has a continuing duty to cooperate fully in **our** investigation and all duties, conditions and responsibilities set forth in this policy shall apply to any **insured person** even if a claim has been paid.

If **we** void this policy from inception, **you** must indemnify **us** for all payments made and any premium **you** have paid will be refunded.

If **we** deny coverage as permitted by provisions 3.A. and 3.B. of this Condition, **we** will not be liable for any claim that would otherwise be covered.

To the extent that **we** make any payment to any party under this policy and **our** subsequent investigation reveals **your**, **a resident** in **your** household, an **insured's person's**, or any person seeking coverage under this policy involvement in fraud or misrepresentation in any application or form submitted to **us** for this insurance, or with regard to any other aspect of this insurance, including, but not limited to procurement of this policy, or presentation of a claim, **you** must indemnify **us** for all payments made.

Condition 10. **Joint Obligations** is now Condition 9. and Conditions 10. **Our Right to Use Other Resources** and 11. **Fees** are added:

10. **Our Right to Use Other Resources**

**You** and any **insured person**, or a person seeking coverage under this policy agree that **we** have the right to utilize outside sources, vendors, experts, consultants and software tools of **our** choosing to assist **us** in underwriting, pricing and issuing **our** insurance policies and to assist **us** in adjusting claims.

11. **Fees**

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments and other transactions. Payments made on **your** policy will be applied to fees first, then to the premium due.

*GJ210P (6-2013)*

*page 6*

VICTOR LLERENA
&ELENA RODRIGUEZ
412 JONESBORO CT
LAVERGNE TN 37086


Dear Policyholder:

**This letter contains important information** regarding changes to your existing homeowners insurance policy with Grange Mutual Casualty Company. We believe it's always important for you to be educated about your policy and the valuable coverage it provides.

**Unprecedented severe weather** over the past several years, such as tornadoes, severe thunderstorms and hail, have made a real impact on the cost of providing insurance. Due to these results, we've decided to make some adjustments in the homeowners coverage we provide.

To keep your annual premium affordable, we've added a separate **Wind-Hail Deductible** to your homeowners policy. This deductible is one percent of your home insurance (Coverage A) and is a specific dollar amount you are required to pay out-of-pocket for a covered claim. It would only apply in case of applicable damage from wind or hail. This means, for example, that if you have a $150,000 home with a 1% wind-hail deductible, you would then be responsible for paying $1,500 ($150,000 x 1% = $1,500) on an applicable wind or hail damage claim before your insurance coverage kicks in. Be sure to read the Declarations Page (included in this mailing) for your specific deductible.

We encourage you to **talk with your independent agent** about these changes and how they specifically affect you. You should also get in the habit of doing a policy review with your agent every three years to account for any changes in your life situation and to make sure you're covered from all perils. For example, if you've recently replaced your roof you may be eligible for an additional discount.

Contact your agent to be sure you're taking advantage of all the **discounts** available to you. They can also provide tips on how to keep your home in shape to avoid costly claims. It's amazing how simple things like cleaning your gutters, changing HVAC filters regularly, installing and maintaining smoke detectors and making sure your door and window locks are functioning correctly can all help to keep your insurance costs down.

**Who you get your insurance from matters**, and with Grange you get the backing of a financially strong company. Grange also provides market-leading claims service, which has been proven time after time, especially in catastrophe situations resulting from severe weather. Isn't it comforting to know that 9 out of every 10 customers said they would recommend Grange Insurance to a friend or colleague?

**Thank you for placing your trust in us** and allowing us to protect your most valuable possessions. We appreciate your business and confidence in us!

Sincerely,

John Ammendola
President, Personal Lines


*IO475 (6-2013)*                                                                 *Continued...*

**Policyholder Notice:**

In addition to the Wind-Hail Deductible change noted on page 1, the following changes have been made to your policy:

**State Exceptions to Homeowners Policy Provisions**

o  In Section I - Property Protection Exclusions

   - Language is added to the Earthquake or Earth Movement exclusion to clarify that there is no coverage under the policy for events of this type regardless of how they are caused. Language is also added that explains the kinds of events that are considered earth movement under this exclusion.

o  In Section II - Personal Liability Protection Exclusions

   - Language is added to the "business" exclusion to clarify that there is no bodily injury or property damage coverage under the policy arising from a business conducted from an insured premises regardless of who owns or operates the business.

o  In Section I - Property Protection and Section II - Personal Liability Protection Conditions

   - Language that requires a continuing duty to cooperate is added to the Misrepresentations, Warranties and Fraud condition.

o  In General Policy Conditions Applying to Section I and Section II:

   - A Fees provision is added to clarify how payments received on your policy are applied.

Please note that this mailing includes the revised State Exceptions to Homeowners Policy Provisions and the HO 567 Windstorm or Hail Percentage Deductible endorsement that applies to your policy. Please keep them with your policy and be sure to read these, along with the attached Renewal Declarations Page, for a thorough understanding of the coverage provided. If there is any conflict between your policy and this letter, the policy provisions will apply. Be sure to store all these documents together in a safe place. Please contact your Grange agent if you have any questions concerning these changes.

*IO475 (6-2013)*                                                                                           *page 2*

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 25 of 79 PageID #: 28

**Grange Mutual Casualty Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 567 |
|---|---|

**Policy Number: GH    6449679**

**Windstorm or Hail Percentage Deductible**
Section I - Property Protection
All Forms except HO-4 and HO-6

**DEDUCTIBLE**

The following special deductible is added to the policy:

The Windstorm or Hail Deductible Percentage (%) shown on the Declarations Page for this endorsement applies only for direct physical loss or damage to covered property, under Section I - Property Protection, caused by windstorm or hail.

The deductible amount that applies for each loss caused by windstorm or hail is determined by multiplying the Windstorm or Hail Deductible Percentage (%) shown on the Declarations Page for this endorsement by the total Coverage A - Dwelling limit. **We** will pay only that part of the total of all loss payable under Section I - Property Protection that exceeds the windstorm or hail percentage deductible. In no event shall the deductible be less than the "Loss deductible" amount shown on the Declarations Page.

All other provisions of the policy remain unchanged.

*IK1156 (12-2003)*

*This is an important part of your Homeowner Policy. Please keep it with your policy.*

**Partner Plus Endorsement**

When this endorsement appears on the Declarations Page of **your** policy, **we** agree to provide the coverage explained in this endorsement. The coverages in this endorsement are subject to all the provisions of **your** policy.

1. **Coverage C - Personal Property**

   a. The limit stated in **your** policy for personal property located away from the **residence premises** is increased to an amount that is 20% of the Coverage C - Personal Property limit shown on the Declarations Page.

2. **Coverage C - Personal Property**
   **Special Limits on Certain Property**

   The limits stated in the Special Limits on Certain Property section of **your** policy for the following Personal Property Groups are increased to the limits shown in this endorsement.

   a. The limit for loss to money, bank notes, bullion, coins and medals and other numismatic property and precious metals including platinum, gold and silver, but not goldware or silverware is increased to $1,000.

   b. The limit for loss to securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, passports, manuscripts, tickets, stamps and other philatelic property is increased to $5,000.

   c. The limit for loss to watercraft, including their trailers, furnishings, equipment and outboard motors is increased to $2,000.

   d. The limit for loss to trailers not used to carry watercraft is increased to $3,000.

   e. The limit for theft of jewelry, watches, precious and semi-precious stones and furs, including any article containing fur which represents its principal value is increased to $5,000.

   f. The limit for theft of silverware, goldware and pewterware is increased to $5,000.

   g. The limit for theft of hand tools (not including lawn and garden tools and equipment) is increased to $5,000.

   h. The limit for loss to property, on the **residence premises**, used at any time or in any manner for any **business** purpose is increased to $5,000.

   i. The limit for loss to property, away from the **residence premises**, used at any time or in any manner for any **business** purpose is increased to $500.

3. **Additional Coverages - Section I**

   The following changes are made to the Additional Coverages - Section I.

   a. **Fire Department Charges**

      The limit stated in **your** policy for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a peril **we** insure against is increased to $1,000.

   b. **Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages**

      The limit stated in **your** policy for Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages is increased to $5,000.

   c. **Trees, Shrubs, Plants and Lawns**

      The limit stated in **your** policy for loss to trees, shrubs, plants and lawns at the **residence premises** is increased to 10% of the limit of insurance shown on the Declarations Page under Coverage A - Dwelling.

*IK1272P (7-2008)*

*continued...*

**Partner Plus Endorsement**

d. **Loss Assessment**

The limit stated in **your** policy for Loss Assessment is increased to $3,000.

4. **Additional Coverages - Section II**

The following change is made to the Additional Coverages - Section II.

a. **Damage to Property of Others**

The limit stated in **your** policy for Damage to Property of Others is increased to $2,000.

5. **Fire Extinguisher Recharge or Replacement**

**We** will pay expenses incurred to recharge or replace a portable fire extinguisher after it is used to fight a fire covered by this policy at the **residence premises**. If the fire extinguisher cannot be recharged, **we** will replace it with one of the same or similar size and specifications. No deductible applies to this coverage.

6. **Kidnap/Ransom Expense**

a. **We** will pay up to $50,000 for **kidnap/ransom expense** incurred by an **insured person** as a result of the kidnapping of an **insured person**. This coverage does not apply to the kidnapping of an **insured person** by an **insured person**, a parent, or a non-resident relative of the kidnap victim. This coverage also does not apply unless:

1) the kidnapping occurred in the United States; and

2) **you** have notified the Federal Bureau of Investigation or other law enforcement agency having jurisdiction of the kidnapping, and have complied with their recommendations and instructions.

b. As used in this coverage, **kidnap/ransom expense** means:

1) reasonable fees and expenses of independent negotiators;

2) reasonable costs of travel, communications and accommodations incurred by **you**;

3) fees for related medical services incurred by the kidnapped **insured person** within twelve (12) months from his or her release from abduction; and

4) payment of up to $5,000 to any person or organization for information leading to the arrest and conviction of any person(s) who kidnaps an **insured person**.

7. **Deductible Waiver**

a. No deductible will apply if a covered loss is equal to or greater than $50,000. This waiver does not apply to losses caused by earthquake.

b. If one loss event damages both **your** home and auto(s), **we** will apply only one deductible to the combined amount of the covered loss provided **you** have auto and home insurance with **us**, or an insurer who is a subsidiary or affiliate of **ours**, for auto and homeowners and each policy provides coverage for the loss. The deductible amount applied to the loss will be the highest deductible shown on the auto or home Declarations Page for the covered damaged property.

*This endorsement is an important part of your Homeowners Policy. Please keep it with your policy.*

*IK1272P (7-2008)*

*page 2*

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 28 of 79 PageID #: 31

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 536 |
|---|---|

**Policy Number:**

**Back-Up Of Sewers Or Drains Coverage**

For an additional premium, **we** cover risk of direct loss to the property described under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property caused by water:

A. which backs up through sewers or drains; or

B. which enters into and overflows from within a:

    1. sump pump;

    2. sump pump well; or

    3. other type system;

    designed to remove subsurface water which is drained from the foundation area.

Coverage does not apply to any loss which is caused by the negligence of any **insured person.**

The limit of liability per **occurrence** is subject to a $500 deductible.

*This endorsement should be attached to your policy as it constitutes an important part of the contract.*

*IK1050 (7-99)*

## Identity Theft Coverage

### Definition

**"Identity Theft "** means the unlawful, unauthorized use of the **insured person's** identity with the intent to commit activities that are statutorily defined as fraud or theft.

### Explanation of Coverage

For an additional premium the following expenses if incurred as a result of **identity theft**, are covered up to the limit shown on the Declarations page:

1. Costs incurred for notarizing fraud affidavits or other similar financial institution documents.

2. Certified mail costs associated with the notification of law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

3. Lost wages due to time taken off work to meet with, or talk to, law enforcement agencies, credit agencies or legal counsel. Up to a maximum payment of $500 per week for a maximum period of four weeks.

4. Duplicate loan application fees, if the original application has been rejected because the lender received incorrect credit information.

5. With **our** prior consent, reasonable attorney fees incurred for:

   a. Defense of lawsuits brought against the **insured person** by merchants or their collection agencies;

   b. The removal of any criminal or civil judgments wrongly entered against an **insured person**, and

   c. Challenging the accuracy or completeness of any information in a consumer credit report.

6. Charges incurred for long distance telephone calls to merchants, law enforcement officials, financial institutions or other credit grantors to report or discuss an actual **identity theft**.

### Exclusions

Under this coverage, **we** will not pay for any:

1. Loss arising out of **business** pursuits of any **insured person**.

2. Expenses incurred due to any intentional, fraudulent, dishonest or criminal act by an **insured person** or any person acting in connection with an **insured person**, whether acting alone or together with others.

### Conditions - Section I

The following is added under Condition 1. **What To Do In Case Of Loss**, paragraph;

(i) produce receipts, bills or other records that support **your** claim for expenses under **Identity Theft Coverage**.

### Deductible

A $250 deductible applies to any loss covered by this endorsement.

All other policy provisions apply.

*IK1069 (05-2000)*

*This endorsement should be attached to your policy as it constitutes an important part of the contract.*

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 542 |
|---|---|

**Policy Number:**

## Fungi, Wet or Dry Rot, or Bacteria Coverage
### Section I - Property Protection
### Section II - Personal Liability Protection

When this endorsement appears on **your** Declarations page and a separate, additional premium is charged for this endorsement, **we** agree to provide coverage for loss caused by **fungi**, wet or dry rot, or bacteria as follows:

### Section I - Property Protection

The Section I - Property Protection limit that is shown for this endorsement on the Declarations page, is the most **we** will pay for the sum of the following:

1.  The total of all loss payable under Section I - Property Protection caused by **fungi**, wet or dry rot, or bacteria; and

2.  The cost to remove **fungi**, wet or dry rot, or bacteria from property covered under Section I - Property Protection; and

3.  The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungi**, wet or dry rot, or bacteria; and

4.  The cost of testing of air or property to confirm the absence, presence or level of **fungi**, wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of **fungi**, wet or dry rot, or bacteria.

The coverage described in this endorsement, under Section I - Property Protection, only applies when:

1.  such loss or costs are a result of a Peril Insured Against that occurs during the policy period; and

2.  only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

### Section II   Personal Liability Protection

1.  **Coverage E - Personal Liability Coverage**

    If a claim is made or a suit is brought against an **insured person** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this Coverage E - Personal Liability Coverage applies, **we** will:

    (a) Pay up to the Coverage E - Personal Liability Coverage limit, that is shown for this endorsement on the Declarations page, for damages which an **insured person** is legally liable.

    Damages include prejudgment interest awarded against an **insured person**; and

    (b) Provide a defense at **our** expense by counsel of our choice, even if the suit is groundless, false or fraudulent. **We** may investigate and settle any claim or suit that **we** decide is appropriate.

    **Our** duty to settle or defend ends when **our** limit of liability for the **occurrence** has been exhausted by payment of a judgment or settlement.

    **Our** total liability under Coverage E - Personal Liability Coverage from any one **occurrence** will not be more than the Coverage E - Personal Liability Coverage limit that is shown for this endorsement on the Declarations page. This limit is the same regardless of the number of **insureds**, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one **occurrence**.

**Our** total liability under **Coverage F - Medical Payments to Others Coverage** for all medical expenses payable for **bodily injury** to one person as the result of one accident will not be more than the Coverage F - Medical Payments to Others Coverage limit that is shown for this endorsement on the Declarations page.

All other provisions of the policy remain unchanged.

*This is an important part of your Homeowner Policy. Please keep it with your policy.*

**IK1120 (9-2002)**

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 620 |
|---|---|

**Policy Number:**

**Homeowners Vantage Plus Endorsement**

For an additional premium and **your** agreement to all of the conditions contained in this endorsement, the following extensions of coverage apply:

1. **Dwelling Expanded Replacement Cost Coverage**

   **We** agree to settle covered losses to the dwelling insured under Coverage A at replacement cost up to a maximum of 150% of the specific limit of liability shown on the Declarations of this policy.

   **You agree to:**

   a. Adjust the limit of liability for Dwelling Coverage A equal to (a) 100% of the replacement cost of the dwelling and (b) increases caused by inflation. **You** must agree to pay the adjusted premium.

   b. Notify **us** within 60 days of the start of any alterations or additions that would increase the value of **your** dwelling.

   IF **YOU** FAIL TO COMPLY WITH ANY OF THE ABOVE PROVISIONS, THIS COVERAGE WILL NOT APPLY.

   **We** will pay only an amount equal to the actual cash value of **your** damaged property until the actual repair or replacement is complete.

   These replacement cost provisions may be disregarded by **you** when **you** present a claim. Instead, **you** may make a claim on an actual cash value basis. If **you** make a claim under actual cash value, **you** may further make a claim within 180 days after the loss for any additional cost **you** incur in replacing the damaged property.

   The Section I deductible shown on the Declarations applies to Dwelling Expanded Replacement Cost Coverage.

2. **Coverage C - Personal Property Limit of Liability**

The limit of liability for Coverage C - Personal Property, is increased to an amount equal to 70% of the Coverage A limit shown on the Declarations page.

The Section I deductible shown on the Declarations applies to Coverage C - Personal Property Limit of Liability.

3. **Personal Property Replacement Cost Coverage**

   **We** have extended Coverage C, Personal Property, to include the full cost of repair or replacement with similar items, without deduction for depreciation, subject to the following terms:

   The replacement cost of any single item of personal property is limited to the amount it would cost to replace it with personal property of like kind and quality.

   Also, under "How Losses Are Settled", Part A regarding awnings, carpet, domestic appliances, outdoor equipment, outdoor radio and TV antennas and aerials is changed to provide replacement cost and subject to the replacement cost conditions. If these items are part of the dwelling, they will be insured under Coverage A. If these items are not a part of the dwelling, they will be covered under Coverage C.

   Personal Property Replacement Cost coverage also applies to articles or classes of property separately described and specifically insured in this policy.

   **Our** liability shall not exceed the smallest of the following, subject to any deductible:

   a. replacement cost at the time of the loss;

   b. the full cost to repair;

   c. any limit of liability in this policy that applies to the covered property at the time of loss; or

*continued...*

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 620 |
|---|---|

**Policy Number:**

**Homeowners Vantage Plus Endorsement**

d. any special limits of liability stated in this policy.

**We** will not pay for loss under this endorsement until actual repair or replacement is made. **You** may disregard this condition and **we** will pay the actual cash value, but **you** have the right to make further claims within 180 days after date of loss for any additional amount incurred because of the above policy conditions.

Exclusion: This endorsement does not apply to watercraft nor does it apply to antiques, fine arts, paintings, statuary and similar articles which by their nature cannot be replaced by new articles. Also, **we** will not pay for any articles whose age or history contributes substantially to their value, including, but not limited to, souvenirs, collectors items and memorabilia.

4. **Mortgage Extra Expense Coverage**

If a covered peril causes a total loss to **your** dwelling, **we** will reimburse **you** for the follow-ing costs and expenses incurred within 120 days of the loss to replace the damaged property:

a. Acquisition Costs.

**We** will pay up to $1,000 for the following direct monetary costs:

1) title search fees;

2) appraisal fees; and

3) application fees.

b. Additional Monthly Mortgage Expense.

**We** will pay that part of the additional monthly mortgage expense on the replace-ment dwelling which is due to a higher rate of interest for the same principal amount, based

on the balance owed on the original mortgage at the time of loss and for a like term.

**Our** limit of liability shall not exceed $250 per month for five years from the date of the first payment. Payment under this coverage will be made semi-annually when you provide satisfactory evidence that the mortgage for which payment is being made remains in full force and effect.

The term "total loss" means loss for which **we** have paid or agreed to pay an amount equal to the total limit of the dwelling coverage under **your** policy.

No deductible applies to this coverage.

5. **Refrigerated Goods Coverage**

Exclusion 4 - Section I, of this policy is amended as follows:

Under Coverage C, **we** will provide coverage for direct physical loss to refrigerated goods caused by interruption of electrical service to the **residence premises** caused by damage to generating or transmission equipment which results in a breakdown in the system supplying electricity; or mechanical or electrical breakdown of the refrigerator or freezer.

The limit of liability per **occurrence** is $500, subject to a $25 deductible.

6. **Lock Replacement Coverage**

**We** will pay up to $250 to replace house locks to **your** dwelling if any **insured person's** keys are lost or stolen. A $25 deductible applies to this coverage.

*IK1046 (7-99)*

*page 2*

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 620 |
|---|---|

**Policy Number:**

## Homeowners Vantage Plus Endorsement

**7. Building Ordinance Or Law Coverage**

Settlement of loss will include additional costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of the building or structure, if the damage to the building or structure was caused by a peril **we** insure against.

No deductible applies to this coverage.

**8. Personal Injury Coverage - Section II**

The definition of **bodily injury** is revised as follows:

**"bodily injury"** means bodily injury, sickness or disease, **personal injury**, and includes care, loss of services and resulting death.

The following definition is added:

**"personal injury"** means injury arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment, or malicious prosecution;

b. libel or slander or defamation of character, or violation of a person's right of privacy; or

c. wrongful entry or eviction, or other invasion of the right of private occupancy.

**Exclusions**

Insurance provided under this endorsement does not apply to:

a. liability assumed by an **insured person** under any contract or agreement;

b. **personal injury** arising out of a willful violation of a penal statute or ordinance committed by or with the knowledge or consent of an **insured person;**

c. **personal injury** sustained by a person resulting from an offense directly or indirectly related to employment by an **insured person;**

d. **personal injury** arising out of **business pursuits** of an **insured person**; or

e. **personal injury** arising out of paid public or civic activities of any **insured person.**

f. Any claim for:

   a. **personal injury** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of lead or asbestos, lead or asbestos compounds or materials containing lead or asbestos; or

   b. any loss, cost or expense arising out of, resulting from or in any way related to any:

     (1) claim, suit, request, demand or order that any insured person or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of lead or asbestos, lead or asbestos compounds or materials containing lead or asbestos; or

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 34 of 79 PageID #: 37

P.O. Box 1218
Columbus, Ohio 43216-1218

| Endorsement | HO 620 |
|---|---|

**Policy Number:**

## Homeowners Vantage Plus Endorsement

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead or asbestos, lead or asbestos compounds or materials containing lead or asbestos.

g. Any claim for:

a. **personal injury** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of pollutants at any time.

b. any loss, cost or expense arising out of, resulting from or in any way related to any:

(1) claim, suit, request, demand or order that any **insured person** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

9. **Non-Owned Watercraft Liability Coverage - Section II**

**We** will provide Section II Liability Coverage for **your** use of watercraft **you** do not own by amending the policy as follows:

**Section II - Exclusions**

Under Coverage E, Personal Liability and Coverage F, Medical Payments to Others, Exclusion 1.(c) is deleted and replaced with the following:

(c) watercraft not located on the **insured premises:**

1) owned by an **insured person** if it has inboard or inboard-outdrive motor power;

2) owned by an **insured person** if it is a sailing vessel 26 feet or more in length.

All terms and conditions of this policy not in conflict with this endorsement remain unchanged.

No deductible applies to this coverage.

*This endorsement should be attached to your policy as it constitutes an important part of the contract.*

*IK1046 (7-99)*

*page 4*

# HOMEOWNERS
# HO-3 SPECIAL POLICY
## 10-160G (9-91)

# HOMEOWNER POLICY COVER SHEET

Your Homeowner insurance policy is a legal contract between you and your insurance company.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

An Index of the major provisions of your policy is included in your policy form. Page numbers refer to the location of these provisions in the policy. Amendatory endorsements may be attached to your policy to modify these provisions or provide you with additional coverage(s).

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

# INDEX OF MAJOR PROVISIONS OF THE POLICY - SPECIAL FORM HO-3

**Declarations Page**
    Your Name
    Location of Dwelling
    Policy Period
    Coverages
    Amounts of Insurance
    Deductible

|  | Beginning on Page |
|---|---|
| **Agreement** | 1 |
| **Definitions** | 1 |
| **Section I - Property Protection** | |
|     Coverage A - Dwelling | 2 |
|     Coverage B - Other Structures | 2 |
|     Coverage C - Personal Property | 2 |
|     Coverage D - Loss of Use | 3 |
|     Additional Coverages | 3 |
|     Deductible | 5 |
|     Perils We Insure Against | 5 |
|     Exclusions | 6 |
|     Conditions | 7 |
|     What To Do In Case Of Loss | 7 |
|     How Losses Are Settled | 7 |
| **Section II - Personal Liability Protection** | |
|     Coverage E - Personal Liability Coverage | 9 |
|     Coverage F - Medical Payments to Others | 9 |
|     Additional Coverages | 10 |
|     Exclusions | 11 |
|     Conditions | 12 |
|     What To Do In Case Of Bodily Injury Or Property Damage | 12 |
| **Conditions - Section I & II** | 13 |
| **Cancellation** | 13 |

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 37 of 79 PageID #: 40

# HOMEOWNERS INSURANCE POLICY SPECIAL FORM HO-3

## AGREEMENT

We agree with you, in return for **your** premium payment, to provide insurance subject to all the terms of this policy. The coverages provided, the limits of our liability and the premiums are shown in the Declarations of this policy.

## DEFINITIONS USED THROUGHOUT THIS POLICY

The terms defined below appear in bold type throughout this policy:

1. **"You" and "your"** mean the Policyholder named in the Declarations and spouse if living in the same household.
2. **"We" , "us"** and **"our"** mean the Company providing this insurance.
3. **"Bodily injury"** means **bodily injury,** sickness or disease, and includes care, loss of services, and resulting death.
4. **"Business"** means:
   (a) any full or part time trade, profession or occupation; and
   (b) the rental or holding for rental of any premises by an **insured person.**
   But, **"business"** does not mean:
   (a) occasional rental or holding for rental of the **residence premises** for use as a dwelling;
   (b) rental or holding for rental of part of the **residence premises** for use as a dwelling, unless the rental is to three or more roomers or boarders; or
   (c) rental or holding for rental of part of the **residence premises** as a private garage, office, school or studio.
5. **"Insured Person"** means:
   (a) **you;**
   (b) **your** relatives residing in **your** household; and
   (c) any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative.
   Under Section II —Personal Liability Protection, **"insured person** also means:
   (d) a person or organization legally responsible for animals or watercraft covered by this policy and owned by a person defined in (a), (b) or (c). But we will cover that person or organization only with respect to those animals or watercraft. We will not cover a person or organization using or having custody of animals or watercraft in the course of any **business** or without permission of the owners.
   (e) with respect to a vehicle covered by this policy, an employee of an **insured person** in (a), (b) or (c), while engaged in the employment of that **insured person.**
   (f) with respect to a vehicle covered by this policy, any other person using the vehicle with **your** permission on an **insured premises.**
6. **"Insured premises"** means:
   (a) the **residence premises;**
   (b) any other premises acquired by you during the term of this policy which you intend to use as a **residence premises;**
   (c) the part of any other premises where you reside and which is shown in the Declarations;
   (d) part of a premises not owned by an **insured person** where the **insured person** may be temporarily residing or which an **insured person** may occasionally rent for **non-business** purposes;
   (e) vacant land, other than farmland, owned by or rented to an **insured person;**
   (f) cemetery plots or burial vaults owned by an **insured person;**
   (g) land on which a single or two family dwelling is being built as a residence for an **insured person,** if the land is owned by or rented to the **insured person;**
   (h) structures or grounds used by you in connection with **your residence premises.**
7. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury or property damage** during the policy period.
8. **"Property damage"** means physical injury to or destruction of tangible property, including loss of its use.
9. **"Residence employee"** means an employee of an **insured person** whose duties are in connection with the maintenance or use of the **residence premises,** or who performs similar duties elsewhere not in connection with an **insured person's business.**
10. "Residence premises" means the one or two family dwelling where you reside, including the building, the grounds and other structures on the grounds and which is described in the Declarations.

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 38 of 79 PageID #: 41

# SECTION I - PROPERTY PROTECTION

## COVERAGE A — DWELLING

**We** cover:

1. **Your** dwelling, including structures attached to it, at the **residence premises.** The dwelling must be used principally as a private residence.
2. Construction material at the **residence premises** for use in connection with **your** dwelling.

## COVERAGE B — OTHER STRUCTURES

**We** cover:

1. Other structures at the **residence premises** not attached to the dwelling. Structures connected to the dwelling by only a utility line, fence or similar connection are considered to be other structures.
2. Construction material at the **residence premises** for use in connection with the other structures.

We do not cover loss to structures:

(a) used to any extent for **business** purposes; or
(b) rented or held for rental in whole or in part to a person other than a tenant of the dwelling, unless used only for private garage purposes.

## COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by an **insured person** anywhere in the world. Any personal property away from the **residence premises** is covered for up to 10% of the Personal Property coverage limit but not less than $1,000. (This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you begin to move there.)

At **your** option, we will cover personal property owned by others while it is on the part of the **residence premises** occupied exclusively by an **insured person.** Also, at **your** option, we will cover personal property of a house guest or **residence employee** in any residence of an **insured person.**

We do not cover:

1. Animals, birds or fish.
2. Motor vehicles or any other motorized land conveyances including their equipment and accessories while in or upon the conveyance.
   We do cover vehicles or conveyances which are:
   (a) used to service the **residence premises** if not licensed for road use; or
   (b) designed for assisting the handicapped.
3. Aircraft and parts. But we do cover model airplanes not used or designed for transporting cargo or persons.
4. Property of roomers and boarders not related to an **insured person,** or property of tenants.
5. **Business** property:
   (a) in storage or held as samples or for sale or delivery after sale;
   (b) relating to a **business** conducted on the **residence premises;**
   (c) away from the **residence premises.**
6. Property rented or held for rental to others by an **insured person.** But, we do cover that property while on the part of the **residence premises** used exclusively by an **insured person** or roomers and boarders.
7 Property in that part of the **residence premises** regularly rented or held for rental to others (except roomers or boarders) by an **insured person.**
8. Radios, tape players, compact disc players, mobile phones and other devices for the recording, reproduction, receiving or transmitting of sound or pictures, or any other electrical equipment which may be operated by power from the electrical system of a land motorized conveyance, while in or upon that vehicle. Accessories to these devices, including antennas, tapes and records are not covered while in or upon a land motorized conveyance.
9. Property specifically described and insured by this or any other insurance.

## SPECIAL LIMITS ON CERTAIN PROPERTY

Special limits apply to the following groups of personal property. These limits do not increase the amount of insurance under Personal Property Coverage. The limit of insurance for each group is the maximum we will pay for any one occurrence for all property included in the group:

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 39 of 79 PageID #: 42

| Personal Property Group | Limit of Insurance |
|---|---|
| 1. Money, bank notes, bullion, coins and medals and other numismatic property and precious metals including platinum, gold and silver, but not goldware or silverware. | $200 |
| 2. Securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, passports, manuscripts, tickets, stamps and other philatelic property. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists. The limit includes the cost to research, replace or restore the information from the lost or damaged material. | $1,000 |
| 3. Watercraft, including their trailers, furnishings, equipment and outboard motors. | $1,000 |
| 4. Trailers not used to carry watercraft. | $1,000 |
| 5. Theft of jewelry, watches, precious and semi-precious stones and furs, including any article containing fur which represents its principal value. | $1,000 |
| 6. Theft of guns. | $2,000 |
| 7. Theft of silverware, goldware and pewterware. | $2,500 |
| 8. Theft of hand tools (not including lawn and garden tools and equipment). | $3,000 |

## COVERAGE D - LOSS OF USE (ADDITIONAL LIVING EXPENSE AND LOSS OF RENTS)

If a covered loss makes **your residence premises** uninhabitable, we will pay the reasonable increase in **your** living expenses necessary to maintain **your** normal standard of living while you live elsewhere.

We will pay for the shortest time needed:

1. to repair or replace the damaged property; or
2. for you to permanently relocate.

We will also pay for **your** loss of normal rents resulting from a covered loss while the rented part of a **residence premises** is uninhabitable, less charges and expenses which do not continue during that time. We will pay this loss of normal rents only for the shortest time needed to make the rented part habitable.

If damage caused by a peril we insure against occurs at a neighboring premises, we will pay reasonable additional living expenses and loss of normal rents for up to two weeks should civil authorities prohibit occupancy of the **residence premises.**

These periods of time will not be shortened by the expiration of this policy.

We will not pay for loss or expense due to the cancellation of a lease or agreement.

No deductible will apply to these coverages.

## ADDITIONAL COVERAGES — SECTION I

1. **Inflation Protection**

    The limits of our liability shown in the Declarations of this policy for Coverages A, B, C and D will be increased at the same rate as the increase in the construction cost index used by us.

    This increase will be applied at the renewal date of the policy. In no event will the limits of liability be reduced to less than those shown on the most recent Declarations page.

2. **Debris Removal.**

    We will pay reasonable expenses you incur to remove debris of covered property if a peril we insure against that applies to the damaged property causes the loss.

    If the damage to that property and the cost of debris removal is more than our limit of liability for the property, we will pay up to an additional 5% of that limit for debris removal.

    We will pay up to $500 in aggregate for any one loss for reasonable expenses incurred by you in removing any fallen trees from the **residence premises** if:

    (a) the falling of the trees is caused by the peril of windstorm or hail; or

    (b) the falling of the trees is caused by the peril of weight of ice, snow or sleet; or

    (c) a neighbor's tree is felled by a peril we insure against under Coverage C; and

    (d) this coverage is not provided elsewhere in this policy.

3. **Fire Department Charges**

    We will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a peril we insure against. We will not pay if the covered property is within the limits of the city, municipality, or protection district which provides the fire department response. Payments are in addition to the amount of insurance applying to the loss.

    No deductible applies to this coverage.

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 40 of 79 PageID #: 43

4. **Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages**
   (a) Credit Card, Charge Plate and Fund Transfer Card Coverage. If an **insured person** is legally required to pay for the unauthorized use of a credit card, charge plate or fund transfer card issued to the **insured person, we** will cover the loss. A fund transfer card is one used for deposit, withdrawal or transfer of funds. But we will not cover use of the credit card, charge plate or fund transfer card by a resident of **your** household. We also will not cover use by someone to whom an **insured person** has given the card or plate. We will not cover any use unless the **insured person** has met all the terms under which the card or plate was issued.
   (b) Check Forgery Coverage. We cover loss sustained by an **insured person** caused by forgery or alteration of a check. This includes all negotiable instruments.
   (c) Counterfeit Money Coverage. We cover loss sustained by an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.
   We will not pay more than $1,000 for any one loss involving one or more of these coverages.
   We do not cover any loss that arises from **business** pursuits or dishonesty of the **insured person.**
   No deductible applies to these coverages.
   If a claim is made or suit is brought against the **insured person** for liability under the Credit Card, Charge Plate or Fund Transfer Card Coverage, we will defend the **insured person.** We will use our lawyers and bear the expense.
   We may at our option and at our expense, defend the **insured person** or that person's bank against a suit to enforce payment under the Check Forgery Coverage.
   We may investigate any claim or settle any suit as we think appropriate.
   We will not defend after we have paid an amount equal to the limit of our liability.

5. **Emergency Removal of Property**
   We will pay for property damaged in any way when being removed or while removed from a premises because of danger from a peril we insure against. Coverage is limited to a 30-day period from date of removal. Payments will not increase the amount of insurance applying to the covered property.

6. **Necessary Repairs After Loss**
   We will pay the reasonable cost of necessary repairs made solely to protect covered property from additional damage following a loss from a peril we insure against. Payments will not increase the amount of insurance applying to the covered property.

7. **Trees, Shrubs, Plants and Lawns**
   We will pay up to 5% of the limit of insurance under Dwelling Coverage for loss to trees, shrubs, plants and lawns at the **residence premises.** Coverage applies to loss caused by the following perils we insure against: Fire or Lightning, Explosion, Riot or Civil Commotion, Aircraft, Vehicles not owned or operated by an occupant of the **residence premises,** Vandalism or Malicious Mischief or Theft. Payments are in addition to the amount of insurance applying to Dwelling Coverage.
   We will not pay for:
   (a) More than $500 of this limit on any one tree, shrub or plant;
   (b) Trees, shrubs, plants or lawns grown for **business** purposes.

8. **Collapse**
   We cover risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   (a) Perils Insured Against in Coverage C-Personal Property. These perils apply to covered building and personal property for loss insured by this Additional Coverage;
   (b) hidden decay;
   (c) hidden insect or vermin damage;
   (d) weight of contents, equipment, animals or people;
   (e) weight of rain which collects on a roof;
   (f) use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
   We do not cover loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.
   Collapse does not include settling, cracking, shrinking, bulging or expansion.

9. **Loss Assessment**
   We will pay up to $1,000 for **your** share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril We Insure Against under Coverage A - Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 41 of 79 PageID #: 44

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. General Policy Conditions Applying To Section I and Section II 6. Policy Period does not apply to this coverage.

10. **Glass or Safety Glazing Material**

We cover the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window. We also cover damage to covered property caused by breakage of glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant. Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

# DEDUCTIBLE

We will pay for loss to covered property minus the deductible, if any, shown in the Declarations.

# PERILS WE INSURE AGAINST

We cover risks of direct physical loss to property insured under the Dwelling and Other Structures Coverages except for losses excluded in this Section.

We cover direct physical loss to property insured under Personal Property Coverage caused by:

1. **Fire or Lightning**
2. **Windstorm or Hail**

This does not include loss:

  (a) caused directly or indirectly by frost, cold weather, ice other than hail, snow or sleet whether driven by wind or not;

  (b) to property in a building caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters; or

  (c) to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building.

3. **Explosion**
4. **Riot or Civil Commotion**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles**
7. **Smoke,** if the loss is sudden and accidental. This peril does not apply to loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or Malicious Mischief**
9. **Theft or Attempted theft,** including loss of property from a known place if it is likely that a theft has occurred.

  (a) This peril does not apply to theft:

    (1) committed by an **insured person;** or

    (2) in or from a dwelling under construction or of construction material and supplies until completed and **occupied.**

    (3) from that part of a **residence premises** rented by an **insured person** to other than an **insured person.**

  (b) This peril does not apply away from the **residence premises** to theft of:

    (1) property while in any other dwelling or its premises owned, rented or occupied by an **insured person** except while an **insured person** is temporarily residing there. Property of an **insured person** who is a student is covered at a residence away from home if the student has been there any time during the 45 days immediately before the loss.

    (2) watercraft, including its furnishings, equipment and outboard motors.

    (3) trailers and campers.

10. Falling Objects

This peril does not apply to loss to property within a building unless the falling object first damages the exterior of the building. We do not cover damage to the falling object.

11. Weight of ice, snow or sleet which damages property in the building.

Case 3:16-cv-00721 Document 1-1 Filed 04/08/16 Page 42 of 79 PageID #: 45

12. **Sudden and accidental tearing apart, cracking, burning or bulging** of a heating, air conditioning or automatic fire protection sprinkler system or a water heating appliance.
This peril does not apply to loss which is caused by or results from freezing.

13. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.
This peril does not apply to loss:
(a) to the appliance from which the water or steam escapes;
(b) caused by or resulting from freezing; or
(c) on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**
In this peril, a plumbing system does not include a sump, sump pump or related equipment.

14. **Freezing** of plumbing, heating and air conditioning systems and domestic appliances.

15. **Sudden and accidental loss caused by artificially generated electrical currents.**
This peril does not apply to tubes, transistors or other electronic components.

16. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors. Volcanic eruption means the eruption, explosion or effusion of a volcano.
One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

# EXCLUSIONS - SECTION I

We do not cover loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. We do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by a peril we insure against.

2. Earthquake or other earth movement including loss caused by, contributed to or aggravated by landslide; mine subsidence; mudflow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire, explosion or breakage of glass.

3. Water damage, meaning:
(a) flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;
(b) water which backs up through sewers or drains or which overflows from a sump; or
(c) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.
We do cover direct loss that follows, caused by theft, fire or explosion.

4. Failure or interruption of power or other utility service which occurs away from the **residence premises.** We will pay for loss caused solely by a peril we insure against that ensues at the **residence premises.**

5. Freezing of plumbing, heating or air conditioning systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant or unoccupied unless you take precautions to:
(a) shut off the water supply and drain the systems and appliances; or
(b) maintain heat in the building.

6. Neglect of an **insured person** to use all reasonable means to protect covered property at and after the time of loss.

7. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

8. Nuclear action, meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these. Loss caused by nuclear action is not considered loss by perils of Fire, Explosion or Smoke.
Direct loss by Fire resulting from nuclear action is covered.

9. An action by or at the direction of any **insured person** committed with the intent to cause a loss.

Under Dwelling and Other Structures Coverages, we do not cover loss resulting directly from:

1. (a) wear and tear, marring, or scratching, deterioration;
(b) inherent vice, latent defect, mechanical breakdown;
(c) smog, rust or other corrosion, mold, mildew or fungus, wet or dry rot;
(d) smoke from agricultural smudging or industrial operations;
(e) discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril We Insure Against under Personal Property Coverage of this policy.

Page 6 of 14

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 43 of 79 PageID #: 46

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) settling, shrinkage, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(g) birds, vermin, rodents or insects; or

(h) animals owned or kept by an **insured person.**

If, because of any of these, water escapes from a plumbing, heating, automatic fire protection sprinkler or air conditioning system or domestic appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system or appliance.

We do not cover loss to the system or appliance from which the water escapes.

2. theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied.

3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

4. vandalism or malicious mischief, including intentionally set fires, if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant.

5. weather conditions, if they contribute to produce the loss in any way with a cause or event excluded under the preceeding section titled "Exclusions"

6. acts or decisions, or the failure to act or decide, of any person, group, organization or governmental body.

7. faulty, inadequate or defective:
   (a) planning, zoning, development, surveying, siting;
   (b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   (c) materials used in repair, construction, renovation or remodeling; or
   (d) maintenance.
   Ensuing loss under items 1 through 8 is covered, if not otherwise excluded in this policy.

8. collapse, other than as provided in Additional Coverage 8.

## CONDITIONS - SECTION I

1. **What To Do In Case Of Loss**
   If a covered loss occurs, the **insured person** must:
   (a) give immediate notice to us or our agent. In case of theft, also notify the police. In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverages, also notify the issuer of card or plate or the bank;
   (b) protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep records of the costs of repairs;
   (c) Make a list of all damaged or destroyed property, showing in detail quantities, costs, actual cash value and amount of loss claimed;
   (d) send to us, within 60 days after we request, the above list and a proof of loss signed and sworn to by the **insured person**, including:
      (1) the time and cause of loss;
      (2) the interest of **insured persons** and all others in the property;
      (3) all encumbrances on the property;
      (4) other policies covering the loss;
      (5) changes in title, use, occupancy or possession of the property; and
      (6) if required, any plans and specifications of the damaged buildings or fixtures;
   (e) exhibit the damaged property to us or our representative, as often as may be reasonably required;
   (f) submit to examinations under oath by any person named by us, while not in the presence of any other **insured person,** and sign the transcript of the examinations;
   (g) produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as we may reasonably require; and
   (h) produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records pertaining to any loss of rental income.

2. **How Losses Are Settled**
   (a) Loss to:
      Personal property;
      Structures that are not buildings;

Page 7 of 14

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 44 of 79 PageID #: 47

Antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings;

will be settled at actual cash value at the time of loss. Actual cash value includes deduction for depreciation. We will pay no more than:

(1) the cost to repair or replace the damaged property with property of like kind and quality; or

(2) the limits of this policy.

(b) Under Dwelling and Other Structures Coverages:

(1) How a loss to the dwelling or other structure will be settled will depend on how the amount of insurance relates to the full replacement cost. In determining full replacement cost, do not include the cost of excavation, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, do not include the cost of those supports below the surface of the ground and inside the foundation walls.

(2) If, at the time of loss, the amount of insurance for the dwelling or other structure in this policy is 80% or more of the full replacement cost, we will pay the full cost to repair or replace the damaged part of the dwelling or other structure, without deduction for depreciation.

(3) If, at the time of loss, the amount of insurance for the dwelling or other structure in this policy is less than 80% of the full replacement cost, we will pay the larger of the following amounts:

(1) the actual cash value of the damaged part of the dwelling or other structure; or

(11) the amount of the loss multiplied by the ratio of the amount of insurance on the dwelling or other structure to 80% of its full replacement cost.

(4) But, we will pay under (2) or (3) no more than the smallest of the following:

(1) the limit of liability in this policy for the dwelling or other structure;

(11) the cost to replace the damaged dwelling or other structure with equivalent construction for equivalent use on the same premises; or

(111) the amount actually spent for necessary repair or replacement of the damaged dwelling or other structure.

(5) If the full cost to repair or replace the damaged property is more than $2,500 or 5% of the insurance for the dwelling or other structure in this policy, we will not be liable for full replacement cost until actual repair or replacement is completed. Once actual repair or replacement is complete, we will settle the loss according to the provisions of (b) (2), (b) (3) and (b) (4) above.

(6) If there are no other structures, the limit of liability shown for Coverage B shall be added to the limit of liability shown for Coverage A, and the sum of the two shall be our limit of liability under Coverage A.

(c) We may make a cash settlement and take all or part of the damaged property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. We must give you notice of our intention within 30 days after we receive **your** proof of loss.

3. **Appraisal**

If **you and we** fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select a disinterested appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss. However, the amount of the award shall be subject to all applicable provisions of the policy, including Section I Conditions 2(b) (4) and (5).

Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal.

4. **Insurable Interest**

We will not pay more than the insurable interest an **insured person** has in the covered property at the time of loss.

5. **Abandoned Property**

**We** are not obliged to accept abandoned property.

6. **Loss to a Pair or Set**

We may repair or replace any part of the pair or set to restore it to its value before the loss, or we may pay the difference between the actual cash value of the property before and after the loss.

7. **Our Payment of Loss**

We will adjust any loss with you and pay you unless another payee is named in the policy or is legally entitled to be paid. We will pay within 60 days after we receive **your** proof of loss and the amount of loss is finally determined by:

(1) agreement between you and us;

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 45 of 79 PageID #: 48

(2) a court judgment; or

(3) an appraisal award.

8. **Mortgagee**

Loss shall be payable to any mortgagee named in the Declarations, to the extent of their interests and in the order of precedence. Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

Our Duties

We will:

(a) protect the mortgagee's interests in the insured building. This protection will not be invalidated by any act or neglect of any **insured person**, breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions;

(b) give the mortgagee 10 days notice before cancelling this policy.

Mortgagee's Duties

The mortgagee will:

(a) furnish proof of loss within 60 days if the **insured person** fails to do so;

(b) pay upon demand any premium due if the **insured person** fails to do so;

(c) notify us of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

(d) give us the right of recovery against any party liable for loss; but giving us this right will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim;

(e) after a loss, permit us to satisfy the mortgagee requirement and receive full transfer of the mortgage.

9. **Suit Against Us**

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

10. **No Benefit to Bailee**

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

11. **Other Insurance**

If both this and other insurance apply to a loss, we will pay our share. Our share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

# SECTION II - PERSONAL LIABILITY PROTECTION

## COVERAGE E - PERSONAL LIABILITY COVERAGE

We will pay all sums, up to our limits of liability, arising out of any one loss for which an **insured person** becomes legally obligated to pay as damages because of **bodily injury or property damage,** caused by an **occurrence** covered by this policy. Damages include prejudgment interest awarded against the **insured person.**

If a claim is made or suit is brought against the **insured person** for liability under this coverage, we will defend the **insured person at our** expense, using lawyers of our choice. We are not obligated to pay any claim or judgment or to defend after we have paid an amount equal to the limit of our liability. We may investigate or settle any claim or suit as we think appropriate.

## COVERAGE F - MEDICAL PAYMENTS TO OTHERS COVERAGE

We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services. These expenses must be incurred within three years from the date of an accident causing **bodily injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on an **insured premises** with the permission of an **insured person,** or

2. elsewhere, if the **bodily injury:**

(a) arises out of a condition in the **insured premises** or the adjoining ways;

(b) is caused by the activities of an **insured person or residence employee** in the course of employment by an **insured person;**

(c) is caused by an animal owned by or in the care of an insured person; or

(d) is sustained by a residence employee arising out of and in the course of employment by an insured person.

We do not cover injury to:

(a) insured persons;

(b) any other person, except a residence employee, who resides regularly on any part of an insured premises.

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 46 of 79 PageID #: 49

We may pay the injured person or the party that renders the medical services.
Payment under this coverage is not an admission of liability by **us or an insured person.**

## ADDITIONAL COVERAGES - SECTION II
**We** will pay, in addition to our limit of liability:

1. **Damage to Property of Others**
   Up to $500 per **occurrence for property damage** to property owned by others caused by **an insured person.**
   Payment will be on a replacement cost basis.
   We will not pay for **property damage:**
   (a) caused intentionally by an **insured person** who has attained the age of 13;
   (b) to property owned by an **insured person.**
   (c) arising out of:
       (1) an act or omission in connection with a premises (other than **insured premises)** owned, rented or controlled by an **insured person;**
       (2) **business** pursuits; or
       (3) ownership, maintenance or use of a land motor vehicle, trailer, aircraft, watercraft or any other motorized land conveyances. This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured person** or to property insured under Section I of this policy.

2. **The Following Expenses**
   (a) All costs we incur in the settlement of a claim or defense of a suit.
   (b) Interest on the entire amount of damages awarded in a suit we defend accruing after judgment is entered and before we have paid, offered to pay, or deposited in court that portion of the judgment which is not more than our limit of liability.
   (c) Premiums on bonds required in a suit we defend. But, we will not pay the premium for the portion of a bond amount that is greater than our limit of liability. We have no obligation to apply for or furnish bonds.
   (d) Loss of earnings up to $50 a day, but not other income, when we ask you to help us investigate or defend any claim or suit.
   (e) Other reasonable expenses incurred at our request.

3. **First Aid Expenses**
   Expenses for immediate medical and surgical treatment for other persons at the time of the accident. We will pay only expenses which an **insured person** incurs for treatment of **bodily injury** covered by this policy.

4. **Loss Assessment**
   We will pay up to $1,000 for **your** share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
   (a) **bodily injury or property damage** not excluded under Section II of this policy; or
   (b) liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
       (1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and
       (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.
   This coverage only applies to loss assessments charged against you as owner or tenant of the **residence premises.**
   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.
   Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:
   (a) one accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   (b) a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.
   The following do not apply to this coverage:
   (a) SECTION II - PERSONAL LIABILITY PROTECTION - Personal Liability Exclusion 8.,
   (b) GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II - 6. Policy Period.

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 47 of 79 PageID #: 50

# EXCLUSIONS - SECTION II

Under Personal Liability Coverage and Medical Payments to Others Coverage, we do not cover:

1. **Bodily injury or property damage** arising out of the ownership, maintenance, use, loading or unloading or negligent entrustment of:

   (a) aircraft. We do cover model airplanes not used or designed for transporting cargo or persons;

   (b) motor vehicles, all other motorized land conveyances, and trailers, owned or operated by or rented or loaned to an **insured person**.

   This exclusion does not apply to:

   (1) a recreational motorized land conveyance designed for use off public roads, not subject to motor vehicle registration and:

   a. not owned by an **insured person**; or

   b. owned by an insured person and on an **insured premises**;

   (2) a motorized golf cart while used for golfing;

   (3) a trailer not carried on or towed by a motorized land conveyance;

   (4) a motor vehicle or motorized land conveyance not subject to motor vehicle registration because it is:

   a. used to service the **insured premises**;

   b. kept in dead storage on the **insured premises**; or

   c. designed for assisting the handicapped;

   (c) watercraft not located on the **insured premises**:

   (1) owned by or rented to an **insured person** if it has inboard or inboard-outdrive motor power;

   (2) owned by or rented to an **insured person** if it is a sailing vessel 26 feet or more in length.

   This exclusion does not apply to **bodily injury to a residence employee** arising out of and in the course of employment by an **insured person**.

2. **Bodily injury or property damage** arising out of the rendering or failing to render professional services.

3. **Bodily injury or property damage** arising out of **business** pursuits of an **insured person**. But, we will cover activities of that person not ordinarily incident to **business pursuits**.

4. **Bodily injury or property damage** caused by the willful, malicious, or intentional act of a minor for which an **insured person** is statutorily liable.

5. **Bodily injury or property damage** arising out of any premises owned, rented or controlled by an **insured person** which is not an **insured premises**. But, we will cover **bodily injury to a residence employee** arising out of and in the course of employment by an **insured person** at such premises.

6. **Bodily injury or property damage** expected or intended by any **insured person**.

7. **Bodily injury or property damage** arising out of war (declared or undeclared), civil war, insurrection, rebellion or revolution.

8. **Bodily injury or property damage** arising out of any nuclear reaction, radiation or radioactive contamination or any consequence of any of these.

9. **Bodily injury or property damage** which arises out of the transmission of a communicable disease by an **insured person**.

10. **Bodily injury or property damage** arising out of sexual molestation or any sexual activity, corporal punishment or physical or mental abuse.

11. **Bodily injury or property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Under the Personal Liability Coverage, we do not cover:

1. Liability assumed under an oral contract or agreement by an **insured person**, or under a contract or agreement in connection with any **business of an insured person.**

2. **Property damage** to property owned by an **insured person.**

3. **Property damage** to property occupied or used by an **insured person** or rented to or in the care, custody or control of an **insured person**. But we will cover **property damage** to such property caused by fire, smoke or explosion.

4. **Bodily injury** to a person if an **insured person** has or is required to have a policy providing worker's compensation, non-occupational disability or occupational disease benefits covering the **bodily injury.**

5. **Bodily injury** to a person who is entitled to benefits which are provided or required to be provided under any worker's compensation, non-occupational disability or occupational disease law.

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 48 of 79 PageID #: 51

6. **Bodily injury or property damage** when an **insured person** is covered under a nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.
7. **Bodily injury** to:
   (a) you;
   (b) **your** relatives residing in **your** household; and
   (c) any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative.
8. Liability for any loss assessment charged against you as a member of an association, corporation or community of property owners.

Under Medical Payments to Others Coverage, we do not cover:

1. **Bodily injury** to a person who is entitled to benefits which are provided or required to be provided under any worker's compensation, non-occupational disability or occupational disease law.

## CONDITIONS - SECTION II

1. **What To Do In Case Of Bodily Injury or Property Damage**

   In the event of **bodily injury or property damage, the insured person** must:
   (a) notify us or our agent as soon as possible. The notice must give:
      (1) **your** name and policy number;
      (2) the time, place and circumstances of the accident, **occurrence** or loss; and
      (3) the names and addresses of injured persons and witnesses;
   (b) send us promptly any legal papers received relating to a claim or suit;
   (c) cooperate with us and assist us in any matter relating to a claim or suit;
   (d) if a loss covered under Damage to Property of Others occurs, send us, within 60 days of the loss, sworn proof of loss. The **insured person** shall also exhibit the damaged property if within the **insured person's** control.

   The **insured person** will not, except at the **insured person's** own cost, voluntarily make any payment, assume any obligation or incur expenses other than for First Aid Expenses at the time of the accident.

2. **Duties of an Injured Person - Medical Payments to Others Coverage**

   The injured person or someone acting on behalf of the injured person will:
   (a) give us, as soon as possible, written proof of claim under oath if required;
   (b) submit to physical examinations at our expense by doctors we select as often as we may reasonably require;
   (c) authorize us to obtain medical and other records.

3. **Limits of Liability**

   Regardless of the number of **insured persons,** injured persons, claims made or suits brought, our liability is limited as follows:
   (a) As respects Personal Liability Coverage, the limit of liability stated in the Declarations is the total limit of our liability for all damages resulting from any one **occurrence**. All **bodily injury and property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be resulting from one **occurrence.**
   (b) As respects Medical Payments to Others Coverage, the limit of liability stated in the Declarations as applicable to "each person" is our limit of liability for all medical expenses for **bodily injury** to any one person as the result of any one accident.

   Subject to the limit for "each person", our limit for **bodily injury** to two or more persons in any one accident shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence"**

4. **Severability Of Insurance**

   This insurance applies separately to each **insured person** against whom claim is made or suit is brought, subject to our limits of liability for each **occurrence.**

5. **Suit Against Us**

   We may not be sued unless there is full compliance with all the provisions and conditions of this policy. We may not be sued under the Personal Liability Coverage until the obligation of an **insured person** to pay is finally determined either by judgment against the person after actual trial or by written agreement of the person, the claimant and us.

   No one shall have any right to make us a party to a suit to determine the liability of an **insured person.**

6. **Bankruptcy**

   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any **insured** person.

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 49 of 79 PageID #: 52

**7. Other Insurance - Personal Liability Coverage**
This insurance is excess over any other valid and collectible insurance. However, if the other insurance is written as excess insurance over this specific policy, the limits of this policy apply first.

# GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II

**1. Assignment**
Interest in this policy may not be transferred without our written consent. But, if the Policyholder named in the Declarations or the spouse of the Policyholder residing in the same household dies, the policy will cover:
(a) a surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the **insured premises;**
(b) the legal representative of the deceased person while acting within that capacity; and
(c) a person having proper custody of insured property until a legal representative is appointed.

**2. Cancellation**
(a) **Your** Right to Cancel
   You may cancel this policy by returning it to us or by advising us in writing when at a future date the cancellation is to be effective.
(b) Our Right to Cancel or Refuse to Renew
   We may cancel this policy only for the reasons stated below by mailing notice of cancellation to you, and to any lienholder named in the policy at the address shown in the Declarations, or by delivering the notice to you.
   (1) We may cancel this policy at anytime with only 10 days notice before the effective date of cancellation if you have not paid the premium payable to us, to our agent or under any finance plan.
   (2) We may cancel this policy for any reason with only 10 days notice before the effective date of cancellation if it has been in effect less than 60 days.
   (3) We may cancel this policy if it has been in effect for 60 days or more, or at any time if it is a renewal **with us, for the following reasons:**
      (a) If there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue the policy, or
      (b) If the risk has changed substantially since the policy was issued.
   We must notify you at least 30 days before the date of cancellation takes effect.
   (4) We may elect not to renew this policy by delivery to **you at your** mailing address shown in the Declarations written notice at least 30 days before the expiration date.
   The mailing of notice, or proof of mailing when required by law, will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.
(c) **Return of Premium**
   When **you** request cancellation, the return premium will be Computed by a method that may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

**3. Concealment or Fraud**
The entire policy will be void if, whether before or after a loss, an **insured person** has:
(a) intentionally concealed or misrepresented any material fact or circumstance;
(b) engaged in fraudulent conduct; or
(c) made false statements;
with regard to this insurance, including procurement of this policy.

**4. Changes**
This policy and the Declarations include all the agreements between you and us relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change. If any coverage you have under this policy is broadened by us without charge during the policy period, this policy will automatically **provide the broadened coverage when effective in your state.**

**5. Our Right to Recover Payment**
After making payment under this policy, we will have the right to recover to the extent of our payment from anyone held responsible. This right will not apply under Section I if you have waived it in writing prior to loss. The **insured person** will do whatever is required to transfer this right to us.
This condition does not apply under Section II to Medical Payments to Others Coverage or Damage to Property Of Others.

10-160G (9-91)

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 50 of 79 PageID #: 53

6. **Policy Period**
   This policy applies only to loss under Section I or **bodily injury or property damage** under Section II, which occurs during the policy period.
7. **Conformity to State Law**
   Any policy provision contrary to laws of the state in which this policy is issued is amended to conform to such laws.
8. **Continuous Renewal**
   If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire.
9. **Breach of Warranty**
   You warrant that any statement you make in the application for this insurance is true. Any misstatement of fact you make in this application for this insurance will render this policy void from the inception date. If **we void your** policy, the premium you have paid will be refunded.
10. **Joint Obligations**
   The terms of this policy impose joint obligations on the person named on the declarations page as the **Insured** and that person's resident spouse. These persons are defined as **you or your.** This means that the responsibilities, acts and failures to act of a person defined as **you or your** will be binding upon another person defined as **you or your.**
   The terms of this policy impose joint obligations on persons defined as an **insured person.** This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person.**

## MUTUAL CONDITIONS
By acceptance of this policy and payment of the premium, you become a member of Grange Mutual Casualty Company, and shall be entitled to vote at all meetings of the Company, but upon cancellation or other termination of the policy you shall cease to be a member.

## POLICY NON-ASSESSABLE
This policy is non-assessable.

## NOTICE OF POLICYHOLDERS ANNUAL MEETINGS
You, by virtue of this policy, are a member of Grange Mutual Casualty Company while this policy is in force and are entitled to one vote at all meetings of the members. The annual meeting of the members is held at 10:00 A.M. on the fourth Thursday of February of each year at our Home Office, Columbus, Ohio, for the election of directors, and for the transaction of such other business as may properly come before the meeting.

**IN WITNESS WHEREOF, we** have caused this policy to be signed by our President and attested by our Secretary, and, if required by state law, this policy shall not be binding upon us unless countersigned by our authorized representative.

**Secretary**

**President**

Case 3:16-cv-00721   Document 1-1   Filed 04/08/16   Page 51 of 79 PageID #: 54





Grange
Insurance

May 6, 2015

Phoenix Claims Consulting
Mr. Ryan Risteen
301 S. Perimeter Park Dr. #100
Nashville, TN. 37211

RE:  *Insured:*        *Victor Llerena and Elena Rodriguez*
     *Claim #:*        *HP0001862131-001-1*
     *Policy #:*       *GH6449679 09 01*
     *Loss Location:*  *412 Jonesboro Ct. LaVergne, TN. 37086*
     *Date of Loss:*   *05/01/2014*

Dear Mr. Risteen:

The purpose of this letter is to advise the investigation of the sinkhole claim has been concluded. It has been determined the damage claimed as a result of sink hole damage is not a result of sink hole activity. We have attached the expert's report and conclusion for your review and records.

Please see the following applicable language.

EXCLUSIONS - SECTION I

We do not cover loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

2. Earthquake or other earth movement including loss caused by, contributed to or aggravated by landslide; mine subsidence; mudflow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire, explosion or breakage of glass.

Under Dwelling and Other Structures Coverages, we do not cover loss resulting directly from:

1. (a) wear and tear, marring, or scratching, deterioration;

(b) inherent vice, latent defect, mechanical breakdown;
(c) smog, rust or other corrosion, mold, mildew or fungus, wet or dry rot;
(d) smoke from agricultural smudging or industrial operations;
(e) discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril We Insure Against under Personal Property Coverage of this policy. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
(f) settling, shrinkage, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
(g) birds, vermin, rodents or insects; or
(h) animals owned or kept by an **insured person.**

7. faulty, inadequate or defective:
(a) planning, zoning, development, surveying, siting;
(b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(c) materials used in repair, construction, renovation or remodeling; or
(d) maintenance

If you have any additional information you would like us to consider or review, please forward to us as soon as possible.

Should you have any questions concerning this letter or the status of your claim, please feel free to contact the undersigned at 731-501-6038 or via electronic mail at sterbanr@grangeinsurance.com.

Sincerely,

Rich Sterban
*Claims Representative*

Copy:  Parker & Watts Ins. Agency

**Tennessee Law requires the following notice:  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines, or denial of insurance benefits.**



EXHIBIT
3

Mary Beth Hagan
Amy J. Farrar
Sonya S. Wright
Joshua A. Jenkins
l'Ashea Myles Dihigo



106 N. Church Street
Murfreesboro, TN 37130
Telephone: 615.800-4747
Facsimile: 615.900.3473
www.haganfarrar.com

sonya@haganfarrar.com

June 10, 2015

<u>Sent Via U.S. Mail and Email: sterbanr@grangeinsurance.com</u>
Mr. Rich Sterban
Claims Representative
Grange Insurance
25 Century Blvd, Suite 101
Nashville, TN 37214-3601

      Re:   Insured:     Victor Llerena and Elena Rodriguez
             Address:    412 Jonesboro Court
                        LaVergne, TN 37086
             Policy No.:  GH-6449679-09-01

Dear Mr. Sterban:

      I represent Victor Llerena and Elena Rodriguez with regards to their insurance claim with Grange Insurance Company ("Grange") for damages that occurred on or about May 1, 2014 to their home. As you are aware, my clients contracted with Grange for a Homeowner's Policy ("Policy") and this Policy was in full force and effect at the time of the loss.

      My clients' home was severely damaged and they contacted Grange to report the loss that occurred to their home. My clients' home has severe cracking in the ceiling, walls, and foundation of the home. There is also an open sinkhole in the cul-de-sac just past my clients' home. In addition, there is known and confirmed sinkhole activity in this area. Regardless of this information, my clients received a letter from you dated May 6, 2015, informing them that Grange would be denying this claim because "the damage claimed as a result of sink hole damage is not a result of sink hole activity."

      In reviewing the letter of April 20, 2015 from Geotek ("Geotek Letter"), it appears that absolutely no testing was conducted. Instead, it appears that the finding is that "the cracks are simply not large enough to reflect sinkhole subsidence," although no measurements were provided. In addition, the Geotek Letter does not establish what the damage resulted from and instead only provides that the "type of distress that we observed is *more likely* to have occurred for many reasons" and then provides a list of possibilities (emphasis added). My clients are uncertain of how a claim determination could be made denying coverage, when apparently there is no positive determination as to what Grange believes even caused the damage. Given the lack

of findings, the lack of any meaningful investigation, and the failure to conduct any testing whatsoever, we would request that you re-evaluate this claim immediately.

I would also request that you provide a certified copy of my clients' Policy to me at 106 North Church Street, Murfreesboro, TN 37130.

If we have not received a satisfactory response by June 22, 2015, my clients have given me the authority to proceed with whatever legal action is necessary to resolve this matter including seeking attorney's fees and expenses if appropriate. This letter also serves as a written demand and notice that failure to pay the claim may result in a pursuit of the bad-faith penalty in court pursuant to Tenn. Code Ann. § 56-7-105.

Thank you for your immediate attention to this matter.

Sincerely,

*Sonya S. Wright*

Sonya S. Wright



EXHIBIT
4



**Grange**
Insurance™

June 18, 2015

Hagan & Farrar. PLLC
Attn: Sonya S. Wright
106 N. Church St.
Murfreesboro, TN. 37130

Date of Loss:        5/01/2014
Claim #:             HP0001862131-001-1
Insured:             Victor Llerena and Elena Rodriguez
Policy:              GH 6449679 09 01
Address:             412 Jonesboro Ct. LaVergne, TN. 37086

Dear Ms. Wright:

Please accept this letter in response to your letter dated June 10, 2015. Enclosed you will find a copy of our insured's certified policy, as well as a copy of the original report provided by Geotek Engineering Company, Inc, as well as a copy of our coverage denial letter dated May 6, 2015.

In your above referenced letter, you expressed concerns regarding an open sinkhole in the cul-de-sac, known sinkhole activity in the area, lack of testing/measurement by the engineer, and cause(s) of damages not addressed by the engineer.

While the report provided by Geotek does not specifically address the area you are calling a sinkhole located in the cul-de-sac, the report does mention there are no depressions on the insured's property. In an effort to address your concern about off premise sinkholes, a call was placed to the engineer who advised he has evaluated the depression in the cul-de-sac and did not feel it was related to this claim. In addition, the engineer has been involved in sinkhole investigations in this area and does not feel there is a relation to the damages at our insured's home and the off premise sinkholes. Should you require more detail on your off premise concerns, we can request the same from the engineer.

Further review of the report provided by Geotek shows there was indeed testing/measurement performed on the home to the extent deemed necessary for the engineer to make a determination on this claim. A zip level was used around the perimeter of the foundation to determine if there is any downward movement of the same. The measurements of this level test are shown on

figure 2 of the report. The differences found in the level of the foundation are small, and well within construction tolerances. This testing along with visual observations led the engineer to determine within a reasonable degree of probability that none of the claimed issues are related to sinkhole activity as defined by the State of Tennessee's Rules, Chapter 1200-004-06. The full definition is included in the engineer's report.

As noted above, sinkhole activity has been ruled out by the engineer as a cause of the damages to the insured's home. According to the report provided by Geotek, the cracks observed are not consistent in their location, or orientation with those typically seen with sinkhole-related subsidence. The engineer further outlines the cracks are more typical of a number of causes as are outlined on page 4 of the enclosed report.

It is our position that the report provided by Geotek addresses all of the concerns outlined in your letter. To date, we have not been provided with any data that would lead us to determine additional investigation is required. Should you have additional information regarding this claim we would ask that you provide it for review. Based on the information known at this time, coverage determination outlined in our coverage denial letter dated May 6, 2015 remains the same. A copy of the coverage denial letter is enclosed.

As you are likely aware, the handling of sinkhole losses is regulated by the State of Tennessee. As outlined in the Tennessee Code Annotated we are required to notify you that should additional testing be requested, and you/we agree to do further testing, the insured could be required to reimburse us for 50% of our costs associated with this investigation, up to $2,500. We would ask that you refer to Tennessee Code Annotated Title 56 Insurance, Chapter 7 Policies and Policyholders, Part 1 General Provisions states in pertinent part:

> (1) If the insurer obtains, pursuant to subdivision (d)(2), written certification that the cause of the claim was not sinkhole activity, and if the policyholder has submitted the sinkhole claim without good faith grounds for submitting the claim, the policyholder shall reimburse the insurer for fifty percent (50%) of the cost of the analysis under subdivision (d)(2); provided, however, that a policyholder is not required to reimburse an insurer more than two thousand five hundred dollars ($2,500) with respect to any claim. A policyholder is required to pay reimbursement under this subdivision (d)(3), only if the insurer, prior to ordering the analysis pursuant to subdivision (d)(2), informs the policy holder of the policyholder's potential liability for reimbursement and gives the policyholder the opportunity to withdraw the claim.

This letter should not be construed as a waiver of any of the terms, requirements and conditions of our insurance contract with you, or as a waiver of any right, claim or potential defense there under, all of which we respectfully reserve without qualification or limitation. If you have any questions or concerns please feel free to contact me via electronic mail at sterbanr@grangeinsurance.com or by phone 731-501-6038.

Sincerely,

Rich Sterban
Claims Representative

Enclosed:     Certified Policy
                Geotek Report
                Coverage denial letter May 6, 2015

VICTOR LLERENA and )
ELENA RODRIGUEZ, )
                     )
       Plaintiffs, )
                     )
v. )
                     )
GRANGE MUTUAL CASUALTY )
COMPANY, )
                     )
       Defendant. )
                     )

2016 MAR -9 AM 10: 38

JOHN A. ???????
CLERK AND ??????

**JURY DEMAND**

**Case No.:** lⱱCV- 351

## INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUESTS FOR ADMISSION TO DEFENDANT

Plaintiffs, Victor Llerena and Elena Rodriguez, by and through their undersigned counsel and pursuant to Rules 26, 33, and 34 of the Tennessee Rules of Civil Procedure, hereby requests Defendant, Grange Mutual Casualty Company, ("Grange") or ("Defendant"), produce for inspection, copying or photographing at Farrar | Wright, PLLC, 122 North Church Street, Murfreesboro, TN 37130, within forty-five days of receipt hereof, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

## I.    INTERROGATORIES.

**DEFINITIONS.**

A.    The terms "Defendant," "you," "your," or "yours" shall mean Grange Mutual Casualty Company, its representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom it has control or have been hired, retained or employed by it to act on its behalf for any purpose whatsoever.

1

B.    The term "Plaintiff" shall mean Victor Llerena and Elena Rodriguez, their representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over whom they have control or has been hired, retained or employed by them to act on their behalf for any purpose whatsoever.

C.    The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D.    The terms "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E.    "Document" or "documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writings letters telegrams telexes, teletypes, correspondents, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda, mechanical and electronic recordings or transcripts of same, blueprints, flow sheet, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intraoffice communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, propositions, articles, announcements, newspaper clippings, books, records, tables, books of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes, and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means

2

made. If multiple copies of any documents exist, each copy is in any way not completely identical to a copy which is referenced shall also be produced.

F.      The terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

(1)      Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

(2)      State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (if any);

(3)      Identify the person(s) who generated it and its current custodian(s).

G.      The term "Property" shall mean the Plaintiffs' property and house located at 412 Jonesboro Court, LaVergne, TN 37086.

1.      Identify the name, address, and title of the person or persons responding to these Interrogatories, the Request for Production of Documents, and the Request for Admissions.

**ANSWER:**


2.      For each person whom you expect to call as an expert witness at trial, state the complete name, address, and telephone number; the subject matter of testimony; the substance of facts and opinions to which expert is expected to testify; and the grounds for each opinion.

**ANSWER:**


3

3.      List by case name, court, and year each lawsuit where Defendant was alleged to have committed bad faith towards its insureds by either a judge or jury for the past five (5) years and state the outcome of each case.

**ANSWER:**


4.      List the names, addresses, and telephone numbers of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any issues raised by the pleadings in this matter or any defenses relied upon by the Defendant, and specify the subject matter about which the person has knowledge.

**ANSWER:**


5.      Are you aware of any other alleged sinkhole activity that has been investigated by you or any other insurance carrier within a one-mile radius of the Plaintiffs' Property during the past five (5) years? If answering affirmatively, please identify the address(es) of the area investigated; the party, if you are aware, that conducted the investigation; whether or not the site contained a confirmed sinkhole; and whether or not the property was repaired, and if so, the method of repair.

**ANSWER:**


6.      Prior to your denial of Plaintiffs' claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for

4

sinkhole activity on nearby properties? If answering affirmatively, please identify the specific areas were the claims were filed, the engineering company retained by you to conduct the investigation for each such claim, and whether or not you provided coverage for the claim. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiffs' home.)

ANSWER:


7.    At or before the Plaintiffs' claim for insurance coverage was denied, do you contend that you ruled out the existence of sinkhole activity within a reasonable degree of scientific certainty? If answering negative, please identify the additional investigation you assert will be necessary to make such a determination and whether you intend on conducting this additional investigation. If answering in the affirmative, please specifically identify all facts and circumstances which you believe supports such a contention and state whether you complied with the minimum standards for investigation of sinkhole claims set forth in Tenn. Code Ann § 56–7–130.

ANSWER:


8.    List what electronically stored data and information that Defendant stores with regards to claims, where it is stored, how long it is stored, and who has access to the stored information.

ANSWER:

5

9.      State the facts and circumstances upon which you rely for each affirmative defense set forth in your Answer.

**ANSWER:**

10.      Do you contend that anything other than a covered peril under the subject property insurance policy is, or may be, the cause, in whole or in part, of damage to the insured premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have previously notified Plaintiffs of your contention.

**ANSWER:**

11.      State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what items such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

**ANSWER:**

12.      For each claim for insurance benefits submitted to you by Plaintiffs during the past four (4) years, please state: (i) the date Plaintiffs first reported the loss to you; (ii) the 'date of loss' or date associated with the claim; (iii) whether the claim was denied: (iv) if any payment was

6

tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

**ANSWER:**

13.     Identify the facts and circumstances regarding all alleged or suspected sinkhole claims received by Defendant in Tennessee and the amount of money spent by Defendant to investigate claims or pay insureds for these claims in the past five (5) years including these claims were denied or covered.

**ANSWER:**

14.     Please state whether you have any contract(s), whether for this specific investigation or globally for all investigations, with any expert that performed an investigation at Plaintiffs' Property. If so, please identify the date such contract(s) were entered into and identify the contract(s).

**ANSWER:**

15.     Please describe the investigation that was completed by Defendant in regards to Plaintiffs' claim involving the Property, including but not limited to the amount of time you spent investigating and deciding whether coverage should be conferred.

**ANSWER:**

7

## <u>VERIFICATION OF ANSWERS TO INTERROGATORIES</u>

**STATE OF** _____ )

**COUNTY OF** _____ )

    I, _____, hereby certify that I have answered the foregoing interrogatories and that my answers are true, correct, and accurate to the best of my knowledge, information and belief.

_____

Grange Mutual Casualty Company

Sworn to and subscribed before me this ____ day of _____, 2016.

_____

Notary Public
My commission expires:_____

8

## II. PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs, Victor Llerena and Elena Rodriguez, by and through their undersigned counsel and pursuant to Rules 33 and 34 of the Tennessee Rules of Civil Procedure, hereby requests Defendant produce for inspection, copying or photographing at Farrar | Wright, PLLC, 122 N. Church Street, Murfreesboro, TN 37130, within forty-five (45) days of receipt hereof, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the request contained in the numbered paragraphs below:

## DEFINITIONS AND INSTRUCTIONS

A. As used herein, "Defendant," "you" or "your" shall mean Defendant, Defendant, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B. As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra- and interoffice communications, correspondence, hand written and/or typewritten notes, pamphlets, diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogs, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrapbooks, notebooks,

9

drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however produced or reproduced.

C.    As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

D.    When producing the requested documents and things, please produce same as they are kept in the usual course of business or label them to correspond with the categories of this request for production.

E.    If you claim a privilege as to any document or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in a manner that without revealing information itself privileged or protected, will enable the Plaintiffs to assess the applicability of the privileged or protection claimed.

F.    The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

10

1.     Produce any and all documents relevant to the claim made by Plaintiffs in this matter, including but not limited to notes, diaries, reports, drafts, charts, drawings, diagrams, or memoranda of any person who visited the Property and/or spoke with Plaintiffs on behalf of Defendant.

**RESPONSE:**


2.     Produce the entire claims manual together with any other corporate policies or guidelines used by Defendant which describes in any form the method, manner or means of handling claims made under property insurance policies which was in effect at the time that Defendant denied the claim referenced in this case.

**RESPONSE:**


3.     Produce any and all documents relating to or referencing the damage to Plaintiffs' Property, including but not limited to any related cost estimates or repair estimates in connection therewith.

**RESPONSE:**


4.     Produce Defendant's complete claims file relating to the claim at issue in this action whether such file is maintained at Defendant's field office, regional office, home office or any other office including without limitation:

11

a. All letters, memoranda, and other forms of written or computerized communication to or from any employee of the Defendant relating in any way to the processing of the claim at issue in this action; and

b. All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of Defendant relating in any way to the processing of the claim at issue in this action; and

c. All written or computerized communications and written or computerized records of oral communication between any employee of Defendant and Plaintiffs or any witness aware of the sinkhole claim at the Plaintiffs' Property; and

d. All written or computerized communications and written or computerized records of oral communications between any employee of Defendant and any third party relating in any way to the claim at issue in this action; and

e. All written or computerized records of any investigation conducted in connection with the claim or claims at issue in this action; and

f. All written or computerized communications and written or computerized records of oral communications to or from any employee of Defendant relating in any way to the decision to deny the claim in this action; and

g. All other written or computerized documents pertaining to the claim at issue in this litigation; and

h. The file folders in which the preceding documents are kept.

**RESPONSE:**

12

5.    Produce all documents relied upon, or responsive to any Interrogatory, Request for Production of Documents or Requests for Admissions that has been made by the Plaintiffs.

**RESPONSE:**

6.    Produce all documents, including but not limited to electronically stored data in a searchable PDF format, for any sinkhole claims that the Defendant has had within a one-mile radius of the Plaintiffs' Property, not including the Plaintiffs' Property.

**RESPONSE:**

7.    Produce all documents including but not limited to reports, electronic data, written correspondence, electronically stored data in a searchable PDF format, and email correspondence, between you and any party regarding the claim that is the subject matter of the Complaint.

**RESPONSE:**

8.    Produce all training materials or documents that are provided to Defendant's agents or representatives regarding selling sinkhole coverage, investigating sinkhole claims, and making coverage determinations in Tennessee for the past ten years.

**RESPONSE:**

13

9.     Produce any and all documents and data in your possession regarding the costs to investigate a sinkhole claim in Tennessee, the costs to make repairs when a sinkhole has been identified, and the amount paid to the insured for confirmed sinkhole activity for the past ten years.

**RESPONSE:**


10.     For each claim in the past ten years, by any insured for sinkhole loss that you have denied or covered in the state of Tennessee, produce the claim file for each such claim.

**RESPONSE:**


11.     Produce all documents and file materials, maintained by you or your agent, including any report or other investigation, which was conducted prior to the issuance of insurance to Plaintiffs.

**RESPONSE:**


12.     Produce a copy of your Certificate of Authority from the commissioner to conduct business within the state of Tennessee for the past five (5) years. If you claim that you are exempt from this requirement, provide all documentations that you are properly licensed to conduct business in the state of Tennessee.

**RESPONSE:**


14

13.   Produce a copy of all documents that were submitted or filed by Defendant to the Tennessee Department of Commerce and Insurance or any other state or federal department related to Tenn. Code. Ann § 56-7-130 or sinkhole coverage, including any amendments, supplements, or updates.

**RESPONSE:**


14.   Produce any documents, emails, bulletins, newsletters, or any other written form, related to Tenn. Code. Ann §56-7-130 or sinkhole coverage that Defendant created, sent, received, or had in its possession prior to Plaintiffs' claim, including but not limited to, how to handle and investigate a sinkhole claim, how sinkhole coverage would be implemented in the state of Tennessee, and any news bulletins or other internal or external communications regarding sinkhole coverage in the state.

**RESPONSE:**


15.   Please produce copies of all fines, reprimands, notices of unauthorized practice, or any other violations of the laws of the State of Tennessee that Defendant has received from the State of Tennessee or the Department of Commerce and Insurance in the past ten years.

**RESPONSE:**


15

16. Produce any and all photographs and/or videos taken of the Plaintiffs' Property with regard to any inspection or testing performed by Defendant, at the request of Defendant, or at the request of any of Defendant's representatives.

**RESPONSE:**


17. Produce any and all documents signed by Plaintiffs, including but not limited to examinations under oath, and/or insurance applications.

**RESPONSE:**


18. Produce any and all documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

**RESPONSE:**


19. Produce any and all documents which support, refute, or otherwise relate to Defendant's or Plaintiffs' claims or defenses in this action.

**RESPONSE:**


20. Produce copies of any and all field logs regarding the findings for drillings completed at the Plaintiffs' Property, recorded by anyone.

**RESPONSE:**

16

21.     Produce copies of any and all statements, forms, recordings, or transcripts of recordings of statements made by Plaintiffs with regard to this claim.

**RESPONSE:**

22.     Produce all documents related to any correspondence between Defendant and any geotechnical engineering, geology or structural engineering company that was consulted and/or performed during any investigation relating to Plaintiffs' Property.

**RESPONSE:**

23.     Produce all documents reflecting any payment to any entity or person that performed any investigation at Plaintiffs' Property.

**RESPONSE:**

17

## III.    PLAINTIFFS' REQUESTS FOR ADMISSIONS

Plaintiffs, Victor Llerena and Elena Rodriguez, by and through their undersigned counsel and pursuant to Rule 36 of the Tennessee Rules of Civil Procedure, hereby requests Defendant respond to Plaintiffs' First Request For Admissions to Defendant within forty-five (45) days of receipt hereof, and admit or deny the following:

1.    On or about May 1, 2014, Plaintiffs were the owners of that certain real property located at 412 Jonesboro Court, LaVergne, Tennessee 37086 ("Property").

ANSWER:


2.    On or about July 16, 2015, Plaintiffs renewed or procured a policy of property insurance from Defendant on the Property ("Policy").

ANSWER:


3.    The Policy covered damage to Plaintiffs' Property for sinkhole losses.

ANSWER:


4.    The Policy issued by Defendant to the Plaintiffs insuring the Property was an all-risk policy.

ANSWER:


18

5.    There was no exclusion in the Policy for sinkholes.

       **ANSWER:**


6.    There is physical damage to Plaintiffs' Property.

       **ANSWER:**


7.    Plaintiffs made an application for insurance benefits under their Policy on or about May 1, 2014.

       **ANSWER:**


8.    The Policy was in full force and effect at the time that the Property was damaged.

       **ANSWER:**


9.    Defendant has refused to pay Plaintiffs' claim.

       **ANSWER:**


10.   Plaintiffs have complied with all conditions precedent to obtaining benefits under the Policy from Defendant.

       **ANSWER:**

19

11.    Defendant has breached its Policy by failing to pay benefits to Plaintiffs for their property damage claim.

ANSWER:

12.    Defendant has failed to comply with all of the statutory requirements of Tenn. Code. Ann § 56-7-130.

ANSWER:

13.    Defendant has been found to have committed bad faith toward is insureds in the past.

ANSWER:

14.    Plaintiffs, through their attorney, sent correspondence to Defendant on June 10, 2015, stating that refusal to pay may result in a pursuit of the bad faith penalty in court pursuant to Tenn. Code. Ann § 56-7-105.

ANSWER:

15.    Plaintiffs paid $1,749.00 to Defendant for Defendant to issue the policy at issue in this case.

ANSWER:

20

Respectfully submitted,

_Sonya S. Wright_
Sonya S. Wright (BPR 023898)
FARRAR | WRIGHT, PLLC
122 N. Church Street
Murfreesboro, TN 37130
Telephone: (615) 800-4747
Facsimile: (615) 900-3473
sonya@farrarwright.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, together with the Summons and Complaint, to Defendant, Grange Mutual Casualty Company, care of the Tennessee Department of Commerce and Insurance, Service of Process Section, Commissioner, 500 James Robertson Parkway, Nashville, TN 37243.

_Sonya S. Wright_
Sonya S. Wright

21